Robert B. REICH, Secretary
of Labor, Petitioner,

v.

GENERAL MOTORS CORPORATION, DELCO CHASSIS DIVISION; and Occupational Safety and Health Review Commission, Respondents.

No. 95–3660.

United States Court of Appeals,
Sixth Circuit.

Argued March 4, 1996.

Decided July 18, 1996.

Bruce Justh (argued and briefed), Ann Rosenthal, U.S. Dept. of Labor, Office of Solicitor, Washington, DC, for Petitioner.

Brian W. Scovill, General Counsel, General Motors Corp., Detroit, MI, Arthur G. Sapper (briefed), Robert C. Gombar (argued). McDermott, Will & Emery, Washington, DC, for General Motors Corp., Delco Chassis Div.

Ray Darling, Secretary, OSHRC, Washington, DC, for Occupational Safety & Health Review Com'n.

Before: NORRIS, SILER, and GODBOLD,[*] Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

The Secretary of Labor petitions for review of a final order of the Occupational Safety and Health Review Commission ("OSHRC") affirming an administrative law judge's decision to vacate three citations issued to respondent General Motors Corporation ("GM") for violating 29 C.F.R. § 1910.147. We agree with OSHRC that the citations should be vacated.

## I. Facts and Proceedings Below

Over the course of several visits to GM manufacturing plants, Occupational Safety and Health Administration ("OSHA") compliance officers observed GM workers servicing three machines that remained connected to their power supplies throughout the servicing operation. OSHA cited GM for violating OSHA's lockout/tagout safety standard, 29 C.F.R. § 1910.147. This standard requires that certain industrial machines be shut down and disconnected from their power source for the duration of servicing or repair operations. The standard's scope provision limits the applicability of the standard to "the servicing and maintenance of machines and equipment in which the *unexpected* energization or start up of the machines or equipment, or release of stored energy could cause injury to employees." 29 C.F.R. § 1910.147(a)(1)(i). The standard does not define "unexpected."

GM appealed the citations to one of OSHRC's administrative law judges, who vacated the citations.

The Secretary petitioned OSHRC to reinstate the citations, arguing that the standard applies where injury "could occur in the event of an unintended" start up of a machine. However, OSHRC considered the standard's scope provision and concluded that the term "unexpected" renders the lockout standard inapplicable to machines that give servicing employees sufficient advance notice or warning of machine start up to allow them to vacate the zone of danger. OSHRC then reviewed the workings of the three machines and held that the Secretary's evidence failed to establish that the machines could have started up without first warning the servicing employee. In particular, OSHRC found that to service any of the three machines, an employee had to pass through electronically inter-locked gates that immediately deactivated the machines when opened. OSHRC further found that once deactivated, an eight to twelve step process

[*] The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

had to be followed to restart each of the machines and that, either by audible or visual signals or the presence of company workers in the immediate area, this multi-step process would have alerted servicing employees that the machines were about to start up. Given the advance notice provided by the start-up warning sequences, OSHRC held that the standard did not apply to GM's machines because they could not be subject to "unexpected" energization.

On appeal, the Secretary does not dispute OSHRC's factual findings but argues that OSHRC erred in failing to apply his interpretation of the scope provision's reference to "unexpected" energizations. Shifting course a bit from his argument before the Commission, the Secretary now argues that "unexpected" means "unanticipated" or "un-planned-for."

## II. Analysis

■ By its terms, the lockout standard's scope provision limits the applicability of the regulation to machines that could cause injury if they were to start up unexpectedly. The Secretary argues that the standard applies "whenever equipment could injure employees if it becomes activated before the servicing employee plans for it to be activated."

■ The Administrative Procedure Act requires this court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This court accords substantial deference to the Secretary's construction of an OSHA standard if it is ambiguous and the Secretary's interpretation of it is reasonable. *Martin v. OSHRC*, 499 U.S. 144, 156, 111 S.Ct. 1171, 1178–79, 113 L.Ed.2d 117 (1991); *Martin v. American Cyanamid Co.*, 5 F.3d 140, 144 (6th Cir. 1993). However, we need not defer to the Secretary's interpretation where an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988).

We conclude that the plain language of the lockout standard unambiguously renders the rule inapplicable where an employee is alerted or warned that the machine being serviced is about to activate. In such a situation, "energization" of the machine cannot be said to be "unexpected" since the employee knows in advance that machine startup is imminent and can safely evacuate the area. The standard is meant to apply where a service employee is endangered by a machine that can start up without the employee's foreknowledge. In the context of the regulation, use of the word "unexpected" connotes an element of surprise, and there can be no surprise when a machine is designed and constructed so that it cannot start up without giving a servicing employee notice of what is about to happen.

■ Even if the standard were ambiguous so as to lend itself to interpretation, it does not follow that the Secretary's interpretation is reasonable. As noted above, the Secretary construes the word "unexpected" to mean unintended, unanticipated, or un-planned for. This interpretation so significantly narrows the meaning of "unexpected" as to make it meaningless, because it would expand the standard's application to cover virtually all machines whether or not the servicing employee knows ahead of time that start up is imminent and has ample time leave the area before machine movement can become hazardous. All the synonyms urged on us and the Commission by the Secretary appear to argue for a standard essentially limited to situations where a machine can start up only if the servicing employee starts it up or directs someone else to do so. Surely that is an impermissibly narrow reading of "unexpected." Of the many terms the drafters could have selected—including "unintended," "unanticipated," and "unplanned-for"—they chose "unexpected."

■ The Secretary argues that the "employer need only determine whether employees could be injured if the equipment is energized, starts up, or releases stored energy during the servicing operation." This test expressly omits the word "unexpected." An interpretation that ignores the import of the word is plainly unreasonable when one con-

siders that the rule repeats the word "unexpected" throughout the standard and twice emphasizes it by placing it in italics. 29 C.F.R. § 1910.147(a)(1)(i) and (b). The drafters of the language obviously assigned importance to the word, and it is unreasonable for the Secretary to ignore it. If the Secretary wishes to broaden application of the standard, the rulemaking process affords him a ready opportunity to do so.

### III. Conclusion

In sum, the lockout/tagout standard covers only those machines that do not provide servicing workers sufficient advance notice of start up to avoid injury. Because the Secretary does not appeal the factual findings of the administrative law judge or OSHRC, and because we agree that OSHRC correctly applied the terms of the standard's scope provisions, the final order of OSHRC is **affirmed.**