**SELKIRK, INC., a Division of U.S. Industries, Inc., Petitioner,**

v.

**UNITED STATES of America OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION and Secretary of Labor, Respondents,**

No. 01–3539.

United States Court of Appeals, Sixth Circuit.

Oct. 10, 2002.

Before GUY and BATCHELDER, Circuit Judges; QUIST, District Judge.*

PER CURIAM.

Petitioner, Selkirk, Inc., a division of U.S. Industries ("Selkirk"), appeals the Occupational Safety and Health Review Commission's ("OSHRC") affirmation of the Occupational Safety and Health Administration's ("OSHA") citation of Selkirk for willfully violating machine guarding regulations under 29 C.F.R. § 1910.212(a)(3)(ii). We AFFIRM.

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

## I.

Petitioner, Selkirk, operates a metal fabrication plant in Logan, Ohio, where it produces stainless steel pipe of various diameters for household appliances. In 2000, Selkirk's Logan plant contained three rolling machines: the Lown roller; the hydraulic Montgomery roller; and the five-inch roller. Since the mid–1990s, the smallest diameter pipe run on the Lown roller was six inches. The Lown roller was primarily designed for larger pipe, so it was operated in reverse mode when rolling six-inch pipe to tighten the cylinder and close the gap. Only the six-inch pipe run on the Lown roller required reverse operation. To actuate its reverse operation, an employee pressed down on a foot pedal. During its forward operation, the Lown roller was guarded by a small piece of sheet metal in front and by a trip wire designed to halt the rollers when pulled. Prior to January 27, 2000, the Lown roller had no guarding during reverse operation.

In 1991, the Ohio Bureau of Workers' Compensation, Division of Safety & Hygiene ("OBWC"), conducted a safety survey of Selkirk's facility. Its report to Selkirk noted that the Lown roller lacked required guarding and specifically referred to 29 C.F.R. § 1910.212 as the source of its findings. The OBWC warned that the Lown roller exposed employees to injuries when operated in reverse.

Over a five-year period, two Selkirk employees were injured when their hands were crushed while running the Lown roller in reverse. The first injury occurred in August 1994. Selkirk employee Martin Redfern's ("Redfern") glove caught in the roller, pulling his hand into the machine and smashing his fingers. Redfern was rolling five-inch pipe in reverse on the Lown roller, which was Selkirk's standard practice at the time. In his post-accident report, Redfern's supervisor, Robert Russell, stated that "the poor design of [the] roller and/or method we use to roll small diameter pipe" contributed most directly to the accident. The accident report concluded that a new roller was needed to prevent a reoccurrence. Selkirk subsequently used a new roller for five-inch pipe, but it continued to roll six-inch pipe on the Lown roller.

On July 26, 1999, Selkirk employee David Bookman ("Bookman") was injured while running six-inch pipe through the Lown roller in reverse. Bookman was trained to place his hands on top of the six-inch pipe while rolling it in reverse motion. Similar to Redfern, his hand was seriously injured when the glove he was wearing became caught in the rollers, causing his left hand to be pulled into the machine and crushed. The Lown roller was unguarded for the reverse operation at the time of the accident. Following Bookman's accident, Selkirk posted signs warning employees not to place their hands on the metal during operation, but it did not make any significant change to the machine. Following his return to work thirty days after the accident, Bookman was not retrained to use the Lown roller in reverse without putting his hands on the pipe.

## II.

On January 27, 2000, OSHA compliance officer Jeffrey See ("See") conducted a compliance inspection of Selkirk's Lown roller after receiving an employee complaint. The inspection was six months after Bookman's accident and five and a half years after Redfern's accident. See noted that the roller remained unguarded for the reverse operation. He observed that the reverse foot pedal was located close enough to the rollers to allow an employee's hand to be caught. See told Selkirk that the Lown roller needed to be guarded for reverse operation as well as forward

operation, and he recommended guarding by time or distance. Specifically, See suggested that Selkirk move the reverse foot pedal to a more remote location. Four days after the OSHA inspection, Selkirk moved the foot pedal to a remote location and installed a guard on the side of the roller.

Following See's inspection, the Secretary of Labor issued a citation to Selkirk for a willful violation of 29 C.F.R. § 1910.212(a)(3)(ii). The regulation requires that the point of operation of machines whose operation exposes an employee to injury be guarded. The Secretary proposed an amended penalty of $63,000.00.

Selkirk asserted a timely objection to the citation and requested a hearing. On September 20–21, 2000, a hearing was held before administrative law judge Nancy J. Spies ("the ALJ"), who affirmed the citation but reduced Selkirk's penalty to $30,000.00. The ALJ found that the cited regulation applied to the Lown roller and that Selkirk had not designed and constructed a proper guarding device for its reverse operation. The ALJ determined that the Lown roller exposed employees to injury when operated in reverse and rejected Selkirk's contention that it trained its roller operators to process the six-inch pipe without touching it during the reverse operation. Citing the testimony of Bookman and other Selkirk employees, the ALJ found that employees were trained to put pressure on the pipe with their hands. Additionally, the ALJ noted that there was no evidence that Selkirk took steps to enforce a rule prohibiting Lown roller operators from touching the pipe, and that it had knowledge that the Lown roller posed a risk of injury to its employees. The ALJ cited numerous sources to support its finding that Selkirk violated 29 C.F.R. § 1910.212(a)(3)(ii).

The ALJ then found that Selkirk's violation was willful. It rejected Selkirk's argument that it made a good faith effort to comply with the regulation after Bookman's 1999 accident. The ALJ concluded that even if Selkirk's arguments were credited, it failed to show that it made a good faith effort to comply, because it was on notice of the violation as early as 1991 when the OBWC notified Selkirk that it needed to guard the Lown roller when it was operated in reverse. Further, the ALJ noted that the possibility of injury became a reality in 1994 when Redfern's hand was crushed. While the ALJ acknowledged that Selkirk took some steps to address employee exposure to the condition after Bookman's 1999 injury, it found that these efforts did not demonstrate an attempt to comply with 29 C.F.R. § 1910.212(a)(3)(ii) because that regulation concerns guarding of machinery rather than training or signage. The ALJ stated:

> The crucial factor is that the Lown roller operators continued to use the machine in its violative condition with the full knowledge of Selkirk's management personnel. Selkirk's intended retraining, its new signs, and its "brainstorming" did nothing to actually protect employees from the in-running rolls between the time of Bookman's accident and January 31, 2000, when the machine was finally guarded.

Accordingly, the ALJ concluded that the violation was willful.

### III.

This Court sets aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, 5 U.S.C. § 706(2)(A); *Reich v. Gen. Motors Corp.*, 89 F.3d 313, 315 (6th Cir.1996). Factual findings by the OSHRC are affirmed if "substantial evidence in the record taken as a whole" support them. *Nat'l Eng'g & Contracting Co. v. OSHA*, 928

F.2d 762, 767 (6th Cir.1991). Legal conclusions are affirmed unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing Administrative Procedure Act, 5 U.S.C. § 706(2)(A)). As a result, this Court gives substantial deference to an agency's construction of its own regulations. *Martin v. Am. Cyanamid Co.,* 5 F.3d 140, 144 (6th Cir.1993). In situations where the meaning of the regulation is not free from doubt, we will give effect to the agency's interpretation so long as it is reasonable. *Martin v. OCSHRC,* 499 U.S. 144, 148–52, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991).

Selkirk does not contest that it violated 29 C.F.R. § 1910.212(a)(3)(ii), rather it contests the ALJ's finding that its violation was willful. We find that substantial evidence supports the OSHRC's conclusion that Selkirk willfully violated the regulation by failing to guard its Lown roller for reverse operation.

A willful violation is one involving voluntary action, done either with "an intentional disregard of or plain indifference to," employee safety and the requirements of the statute. *DCS Sanitation Mgmt., Inc. v. OSCHRC,* 82 F.3d 812, 816 (8th Cir. 1996). A willful violation occurs when an employer makes "a conscious, intentional, deliberate, [or] voluntary decision," to expose its employees to a known hazard. *Donovan v. Capital City Excavating Co.,* 712 F.2d 1008, 1010 (6th Cir.1983). It does not matter that the employer lacked malicious intent or "venial motive." *Id.*

The record evidences that Selkirk continued to expose its employees to potential injury for nearly ten years after the dangerous condition was brought to its attention by the OBWC in 1991. It is also apparent from the record that Selkirk did not sufficiently guard the Lown roller for reverse operation following Redfern's 1994 accident or Bookman's 1999 accident.

Each of these incidents underscore Selkirk's long-standing knowledge that its Lown roller was not in compliance with 29 C.F.R. § 1910.212(a)(3)(ii), as well as its failure to correct the problem. The ALJ also correctly distinguished each of the cases that Selkirk cited for the proposition that the violation was not willful because Selkirk was allegedly making good faith efforts to rectify the condition. We thus hold that the ALJ's factual findings are supported by substantial evidence in the record, and its legal conclusions are not arbitrary or capricious.

**IV.**

Accordingly, the OSHRC's affirmance of Citation 1, Item 1 arising from OSHA Inspection No. 300536372 as a willful violation is **AFFIRMED.**