**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 08a0094n.06
Filed: February 4, 2008
No. 07-3384

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ELAINE L. CHAO, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,
    *Petitioner*

                                On Petition for Review of a Decision of the
                                Occupational Safety and Health Review
                                Commission

        v.

GREENLEAF MOTOR EXPRESS, INC., AND
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION,
    *Respondents*

_____/


**BEFORE: KENNEDY, MARTIN, and COLE, Circuit Judges.**

**KENNEDY, Circuit Judge.** The Secretary of Labor ("Secretary") petitioned for review

of a final order issued by the Occupational Safety and Health Review Commission

("Commission") affirming all seven citation items issued to Greenleaf Motor Express, Inc.

("Greenleaf") for violations of the permit-required confined space standard set forth under 29

C.F.R. § 1910.146, but reversing the Administrative Law Judge's ("ALJ") characterization of

four citation items as "willful" violations. Because the Commission's finding that the violations

were "serious" rather than "willful" is supported by substantial evidence in the record, we

**AFFIRM** the Commission's decision and **DENY** the petition for review.

**BACKGROUND**

Greenleaf operates a tanker transport business that includes transferring titanium dioxide

slurry between two plants at the nearby chemical manufacturing facility of its client, Millennium

Chemicals ("Millennium"). The transfer process requires Greenleaf's tankers to be pressurized to facilitate offloading of the slurry. There are two hoses in Millennium's offload area that are used to pressurize Greenleaf's tankers – one contains plant air and the other contains nitrogen, a substance that displaces oxygen. To pressurize the tanker for offloading, Millennium operators hook up either the nitrogen or plant air line to an intake valve located on the side of the tanker. The nitrogen line had been marked as containing nitrogen until about two months prior to the accident which resulted in the citations in contest. It appears that the identification of the nitrogen hose was removed by painters during routine maintenance.

Once the slurry has been offloaded, Greenleaf's tankers return to its facility where Greenleaf employees pressure-wash the inside of the tankers with water to collect the residual slurry for recovery. To do so, the assigned tank cleaner must enter the tanker through a thirty-three inch diameter manhole located at the top of the tanker; this manhole is the only means of entry to and exit from the tanker. The tank cleaner places a ladder and a light down into the tank along with a pressurized hose. The tank cleaner then washes the walls inside the tank with water.

In 1994, Greenleaf contracted with Charles Management to conduct a confined space analysis of Greenleaf's tanks and to develop a confined space program. The developed Greenleaf program specifically designates the tank trailers used to haul slurry as permit-required confined spaces, although it does not explain the reasons for such a designation. The program sets out safety procedures to be followed for permit-required confined space entry, such as monitoring for oxygen deficiency to ensure that oxygen levels are between 19.5% and 23.5%. The program also covers the need for ventilation, completion of entry permits, usage of an attendant and communication equipment, emergency rescue procedures, and training of entrants.

2

At the time this case arose, Greenleaf employees were not following the entry procedures of its confined space program. As the tank room "lead man," former employee Earl Jeffers was responsible for weekly calibrating Greenleaf's air monitor and submitting records of the air readings for entry permits. Jeffers testified that he was instructed by his predecessor to record weekly calibrations of the air monitor but not to bother testing the tankers before issuing an entry permit. Instead, Jeffers filled out the entry permits by fabricating a number between 19.5% and 23.5% (the range permitted by the standard). Rick Snyder replaced Jeffers as the lead man in September 2002. Apparently, with the exception of one permit dated October 21, 2002, no permits were completed for any entries during the four months of September, October, November, and December. Snyder testified that prior to 2003, he did not even know that Greenleaf had air monitoring equipment. Employees routinely entered the tankers to clean them without first testing the air for oxygen deficiency and without using harnesses, attendants, communication equipment, or ventilation equipment.

On the evening of December 20, 2002, Greenleaf employee Jeremy Imrie performed slurry transfers at Millennium's facility. According to the testimony of Millennium personnel, nitrogen was used that night to pressurize the tanker operated by Imrie. The following morning, Greenleaf assigned Imrie the task of cleaning the tanker he had operated the night before. Shortly after he commenced work, Greenleaf personnel found Imrie dead inside the bottom of the tanker. Testing revealed an oxygen reading of 11% inside the tanker.

Following an inspection, the Secretary issued Greenleaf serious, willful, and other-than-serious citations alleging violations of the permit-required confined spaces standard[1] of the

---

[1]The permit-required confined spaces standard is set out in 29 C.F.R. § 1910.146.

Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq* ("OSH Act"). Greenleaf contested these citations. An Administrative Law Judge ("ALJ") affirmed all but one citation item as alleged. Greenleaf timely filed a Petition for Discretionary Review of the ALJ's decision to the full Commission, which was granted. On review, the Commission affirmed the seven citation items, but re-characterized the four willful items[2] as serious. The Secretary timely petitioned this court for review of the Commission's decision.

## ANALYSIS

We give considerable deference to Commission decisions on appellate review. In reviewing decisions of the Commission, we will uphold the Commission's findings of fact so long as they are supported by substantial evidence. 29 U.S.C. § 660(a); *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 721 (6th Cir. 1999).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The substantial evidence test protects both the factual findings and the inferences derived from them, and if the findings and inferences are reasonable on the record, they must be affirmed even if this court could justifiably reach a different result *de novo*.

---

[2]Willful Citation 2: Item 1 alleges violations of 29 C.F.R. §§ 1910.146(d)(3)(iv) and (d)(4)(ii), which require the employer to ventilate the permit space and provide ventilating equipment. Item 2 alleges a violation of 29 C.F.R. § 1910.146(d)(5)(i), which requires the employer to test conditions in the permit space before entry is authorized. Item 3 alleges a violation of 29 C.F.R. § 1910.146(d)(6), which requires the employer to provide an attendant outside the permit space for the duration of entry operations. Item 4 alleges violations of 29 C.F.R. §§ 1910.146(d)(10) and (e)(1), which require the employer to develop and implement a system for entry permits that document the completion of safety measures before entry is authorized.

*Nat'l Eng'g*, 181 F.3d at 721 (internal quotations omitted). The willfulness of an OSH Act violation is a factual finding that we review under the substantial evidence standard. *Id.*

A willful violation is action "taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality." *Nat'l Eng'g*, 181 F.3d at 721 (quoting *Empire-Detroit Steel Div. v. Occupational Safety and Health Rev. Comm'n*, 579 F.2d 378, 383 (6th Cir. 1978)). Conduct is willful if it is conscious, intentional, deliberate, and voluntary. *Id*. A violation is also characterized as willful if the action is taken with "plain indifference" to employee safety and the requirements of the OSH Act. *Selkirk, Inc. v. Occupational Safety and Health Rev. Comm'n*, No. 01-3539, 2002 WL 31296333, at *3 (6th Cir. Oct. 10, 2002) (citing *DCS Sanitation Mgmt., Inc. v. Occupational Safety and Health Rev. Comm'n*, 82 F.3d 812, 816 (8th Cir. 1996)).

The Secretary contends that the Commission's finding that Greenleaf's violations were serious rather than willful is not supported by substantial evidence. Rather, the Secretary argues, the evidence requires a finding that Greenleaf's violations were committed with an intentional disregard of or plain indifference to the requirements of the OSH Act. We disagree.

The Secretary's central argument for finding a willful violation is that Greenleaf did not follow its internal confined space program, which designated the slurry tankers as permit-required confined spaces (although it did not identify the basis of that determination). The Secretary argues that Greenleaf's internal procedures demonstrate that Greenleaf actually knew that its tankers required permits under the OSH Act. But here the ALJ and the full Commission found that Greenleaf only had constructive knowledge of the violative conditions, i.e. that nitrogen was sometimes used to offload the slurry creating the potential for the tankers to contain

5

a hazardous atmosphere. There is evidence in the record to show Greenleaf employees thought that Millennium used only compressed air to offload the slurry tankers. It is undisputed that if the slurry tankers were pressurized with air rather than nitrogen, the tankers would not have the potential to contain a hazardous atmosphere, and thus would not require permits under the regulations. Thus, if Greenleaf employees were correct in assuming that compressed air was the only substance used, it would be a reasonable inference that Greenleaf believed its internal policies went above and beyond the statutory requirements by designating the slurry tankers as permit-required. In the absence of actual knowledge of the violative conditions, the Commission found that the evidence that Greenleaf employees falsified atmospheric testing reports (without Greenleaf's knowledge), as well as the plant supervisor's apparent dishonesty in claiming that he would have monitored Imrie's tank entry had he known about it, shows only a failure to comply with company procedures that Greenleaf did not know were required under the OSH Act. Thus, the Commission concluded that there was no basis on which to conclude that Greenleaf's non-compliance with the provisions demonstrated a conscious disregard of its statutory obligations. We cannot say that this is an unreasonable conclusion based on the relevant evidence.

Alternatively, the Secretary argues that the evidence demonstrates Greenleaf's plain indifference to the requirements of the OSH Act, which if found would also support a willfulness characterization. Commissioner Rogers dissented on this ground. Commissioner Rogers reasoned that the falsification of atmospheric testing reports leads to the inference that even if Greenleaf knew that the statutory provisions applied, it would not care. The majority of the Commission, however, disagreed. We find that the Commission's conclusion is supported by the fact that there is no evidence in the record to suggest that any Greenleaf supervisor knew the

6

employees were falsifying the reports. Furthermore, prior to this incident, Greenleaf had not received any citations for safety violations nor had any Greenleaf employee reported experiencing breathing difficulties inside a slurry tanker. Because there is no evidence in the record to suggest that Greenleaf disregarded warnings that it was exposing its employees to a hazardous condition, we find that the Commission's finding that Greenleaf was not plainly indifferent to the requirements of the OSH Act is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the Commission as supported by substantial evidence and **DENY** the petition for review.