*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARGENT INTERNATIONAL, INC.,

Plaintiff-Appellant,

v

MICHIGAN OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION,

Defendant-Appellee.

UNPUBLISHED
March 26, 2026
11:53 AM

No. 367576
Ingham Circuit Court
LC No. 23-000171-AA

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

MURRAY, J (*concurring*).

The question resolved by the majority opinion is whether the applicable workplace safety regulations covered the act that led to the employee's injury, or more specifically, whether the act of aligning material into a machine to prevent the machine from jamming constituted the servicing or maintenance of the machine under the regulations that formed the basis of the MIOSHA citation. As explained below, although the regulations are geared to a maintenance employee making repairs to particular machines, certain portions of the regulations are broad enough to cover the act engaged in by the employee.

As the majority opinion makes clear, the "lockout/tagout" section of the Code of Federal Regulations[1] governs "the servicing and maintenance of machines and equipment" where the unexpected energization or start-up of the machine could occur:

> This standard covers the servicing and maintenance of machines and equipment in which the unexpected energization or start-up of the machines or equipment, or release of stored energy could cause injury to employees. This standard establishes

---

[1] As the majority opinion recognizes, Michigan's regulation incorporates the federal OSHA standards.

-1-

minimum performance requirements for the control of such hazardous energy. [29 CFR 1910.147(a)(1)(*i*).]

"This standard applies to the control of energy during servicing and/or maintenance of machines and equipment." 29 CFR 1910.147(a)(2)(*i*). The definition of "servicing and/or maintenance" includes setting up, adjusting, and unjamming machines or equipment:

> Workplace activities such as constructing, installing, setting up, adjusting, inspecting, modifying, and maintaining and/or servicing machines or equipment. These activities include lubrication, cleaning or unjamming of machines or equipment and making adjustments or tool changes, where the employee may be exposed to the unexpected energization or startup of the equipment or release of hazardous energy. [29 CFR 1910.147(b).]

These standards apply "to general industry workers who may be exposed to the unexpected energization, startup, or release of hazardous energy *while performing servicing and maintenance on machines and equipment*." Occupation Safety and Health Law; Compliance and Practice, § 15.6. (emphasis added). "Generally, these activities are performed by maintenance employees," and "[p]roduction workers generally are not covered" unless they too are engaged in servicing or maintenance of the machine. *Id*. See also *Reich v General Motors Corp*, 89 F3d 313, 315 (CA 6, 1996) ("The standard is meant to apply where a service employee is endangered by a machine that can start up without the employee's foreknowledge."). As the above makes clear, the plain focus of these regulations is on worker safety when machine repair or maintenance is occurring, see *Reich*, 89 F3d at 314 ("This standard requires that certain industrial machines be shut down and disconnected from their power source for the duration of servicing or repair operations."), outside of normal production operations, *Secretary of Dep't of Labor v Action Electric Co*, 868 F3d 1324, 1336 (CA 11, 2017).

Because this is the obvious and plain focus of the regulations, and because it is undisputed that the employee here was not a service or maintenance employee, and was instead engaged in normal production operations when the injury occurred, plaintiff argues the citation was not supported by the law. That was my initial inclination as well, for a common-sense reading of the regulations reveals an intent to protect maintenance workers who are performing repair or maintenance on these machines. However, several courts have recognized that 29 CFR 1910.147(b) contains a non-exhaustive list of examples, and that when the activity at issue is similar to those explicitly listed, the activity is covered. This is especially so given that the over-arching purpose of the regulation is to provide worker safety when engaged in legitimate workplace activity. See, e.g., *Otis Elevator Co v Sec'y of Labor*, 412 US App DC 116, 123; 762 F3d 116 (2014) (finding the application of the LOTO standard to "unjamming" work to be expressly contemplated by the text of the regulation but also broadly in line "with the standard's preventative purpose"). As explained in *Action Electric Co*, 868 F3d at 1335:

> The clear thrust of the regulation is broadly to ensure safety where an employee performs legitimate workplace activities directed at the relevant machine and "where the employee may be exposed to the unexpected energization or startup of the equipment or release of hazardous energy." See 29 CFR § 1910.147(b) (listing examples of workplace activities using the phrase "such as")[.]

Here, although the employee was not unjamming the machine, he was exposing his hands to the unexpected energization of the machine while manipulating the material entering the machine so that it would not jam, a form of preventative maintenance. Under the foregoing law, the employee's acts were covered by the regulation.

/s/ Christopher M. Murray