**Arwen BIRD, Plaintiff–Appellant,**

v.

**LEWIS & CLARK COLLEGE; Thomas Darrow, PhD; Larry A. Meyers, Defendants–Appellees.**

**Arwen Bird, Plaintiff–Appellee,**

v.

**Lewis & Clark College; Thomas Darrow, PhD; Larry A. Meyers, Defendants–Appellants.**

**Nos. 00–35912, 00–35944.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2002.

Filed Sept. 3, 2002.

---

Elizabeth A. Carl, Portland, OR, for the plaintiff-appellant-appellee.

R. Daniel Lindahl, Bullivant, Houser, Bailey, Portland, OR, for the defendants-appellees-appellants.

Before GOODWIN, T.G. NELSON and W. FLETCHER, Circuit Judges.

GOODWIN, Circuit Judge:

Arwen Bird ("Bird") appeals the judgment in favor of Lewis & Clark College and a number of school administrators (collectively, "the College"). Bird alleges, among other claims, that the College discriminated against her on the basis of disability, in violation of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794 et seq., and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm for the following reasons.

**Background**

**A. Factual history**

Bird was a student of the College when an automobile accident left her confined to a wheelchair. Upon learning of her injury, the College rebuilt parts of the campus to make it more wheelchair-accessible. It installed ramps at Bird's dormitory, changed its inside doors, and remodeled the bathrooms. It also reconfigured the biology labs where she worked.

In the fall of 1994, Bird applied for, and was accepted in, the College's Spring 1996 overseas program. The program was field-based and required participants to spend much of their time exploring the Australian continent. After accepting Bird into the program, the College approached Global Education Designs ("Global"), an Australian company making arrangements for the program, and inquired about the possibility of including a student in a wheelchair. Global indicated that the program could be revised to accommodate Bird.

In preparation for the trip, Bird met with Professor Thomas Darrow ("Darrow"), faculty director of the Australia program, and Larry Meyers ("Meyers"), director of the department of overseas programs. Bird described to them her needs for special living accommodations. She also discussed her medical condition, including the need for various antibiotics and anti-inflammatories. Finally, she mentioned some problems she might encounter in outdoor settings. As a result, Bird was informed that she could not participate in several activities due to her disability, but that alternative activities would be arranged.

Bird was otherwise assured that the program would be able to accommodate her disability. In an e-mail to Bird's parents, Darrow explained that Global and Meyers "commonly handle people both in the field and in home stays that are more physically challenged than [Bird]." Darrow further assured them that adequate facilities would be available in most of the outdoor trips.

Not every aspect of the program conformed to her requirements. At some 22 locations, Bird did not have full wheelchair access. Bird's first set of complaints is related to her lodgings. In Sydney, Bird could not enter or leave her dormitory without assistance because of a steep curb to the sidewalk and a steep ramp.

She also could not use the shower or the toilet unless someone assisted her. While staying at Jervis Bay, Bird needed assistance accessing the bathroom from her bedroom because the open ground between them was uneven and obstructed. The bathrooms in Canberra were not fully wheelchair-accessible, and she had to be carried up several stairs in order to reach the cafeteria. At Stradbroke Island, where Bird had been assured that the lodgings would be wheelchair-accessible, Bird found that access to her bedroom involved a stairway, and the doorway for the stalls in the bathroom was too narrow for her wheelchair. At the Coconut Beach Resort, she stayed at a lodging that was not wheelchair-accessible.

Bird also could not participate in a number of outdoor activities because of her disability. She could not join a tour exploring the tide pools at Jervis Bay, or complete a hike at Lamington Plateau. She skipped a three-hour morning boat tour of Stradbroke Island because she would have to use the bathroom during the tour. She did not hike at Carnarvon Gorge because it involved multiple stream crossings, and the group leader did not want Bird to jeopardize the safety of herself and others by participating. At Rubyvale, Bird could not go mining because the mine shaft involved a vertical drop.

Finally, Bird complains that transportation was not wheelchair-accessible, and that she had to be carried onto a bus heading from Jervis Bay to Canberra, and again from Brisbane to Lamington Plateau.

Although not every aspect of the program conformed to Bird's needs, the College offered evidence of having accommodated her disability. First, it provided Bird with alternative modes of transportation: it paid for her use of taxis in Sydney, and for her flight from Canberra to Brisbane while other class members used buses and trains. It arranged for a wheelchair-accessible van to transport her around Stradbroke Island.

The College also tried to satisfy Bird's unique living requirements. It paid two students enrolled in the program to be her helpers. It purchased a sleeping cot manufactured to her specifications, and a special shower head for her use. It provided a smaller, narrower wheelchair so that Bird could move indoors when door openings were too narrow for the normal wheelchair.

When Bird complained about her home stay in Brisbane, she was offered, but declined to accept, a different, more fully accessible house. At Jervis Bay, Coconut Beach, Gladstone, Heron Island, and Stradbroke Island, Bird was offered the use of one of two different rooms, one with the rest of the group but not wheelchair-accessible, the other in a separate area and more wheelchair-accessible. In Canberra and Sydney, Global reserved rooms on the ground floor for Bird.

Finally, the College, through its contractor Global, arranged a number of outdoor activities with Bird's disability in mind. At Lamington Plateau, Bird joined the study group working in an area close to a wheelchair-accessible path. She used a raft provided by Global so that she could float in the water and observe coral reefs at Heron Island. The class conducted a rainforest study at Lamington Plateau, based out of a more accessible site than that normally chosen for the study. It also held a pictograph study at Carnarvon Gorge, using a trail that was wheelchair-accessible.

Bird otherwise participated in a number of class activities. She toured the Sydney Harbor, visited an archeological site near the Harbor, and was able to access the classrooms at the University of Sydney. Bird traveled to an aboriginal community

at Jervis Bay, and went on excursions at Heron Island, Stradbroke Island, and Carnarvon Gorge National Park. Bird received one A, two C minuses and one D for the semester, and earned the full 16 credits toward her degree in biology.

## B. Procedural history

On May 12, 1998, Bird filed this action against the College, alleging: (1) violation of the Rehab Act, (2) violation of Title III of the ADA, (3) breach of contract, (4) breach of fiduciary duty, (5) defamation, (6) negligence, (7) fraud, (8) negligent misrepresentation, and (9) intentional infliction of emotional distress. All of the claims essentially share one premise: during Bird's stay in Australia, the College discriminated against her on the basis of disability by failing to provide her with wheelchair access.

Both parties moved for summary judgment. The district court granted judgment against Bird on her defamation and intentional infliction of emotional distress claims.

Two claims for equitable relief under the Rehab Act and Title III (collectively, "the Acts") were subsequently tried to the court. The remaining viable claims, including Bird's claim for damages under the Rehab Act, were tried to the jury.

The jury found against Bird on all but the breach of fiduciary duty claim for which it awarded her $5,000. The district court subsequently denied Bird's claims for equitable relief under Title III and the Rehab Act. The district court also denied Bird's motion for a new trial, along with the College's motion for judgment as a matter of law on the breach of fiduciary duty claim. Both parties timely appealed.

## Discussion

Bird contends that, because the failure to provide access in even one instance is disability discrimination under the Acts, the district court erred by denying: (1) her motion for summary judgment on the two claims; (2) equitable relief; and (3) her motion for a new trial. Although Bird appeals the denial of summary judgment, we decline to review the district court ruling after the jury has decided the case. *See De Saracho v. Custom Food Mach., Inc.,* 206 F.3d 874, 877–78(9th Cir.2000).

## I. Equitable relief

### A. Standing

■ Before we reach the merits of Bird's challenges, we must resolve the threshold issue of standing. In order to satisfy Article III's case or controversy requirement, Bird needs to show that she has suffered an injury in fact, that the injury is traceable to the challenged action of the College, and that the injury can be redressed by a favorable decision. *Cantrell v. City of Long Beach,* 241 F.3d 674, 679 (9th Cir.2001). In the context of declaratory and injunctive relief, Bird must demonstrate that she has suffered or is threatened with a "concrete and particularized" legal harm, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), coupled with "a sufficient likelihood that [s]he will again be wronged in a similar way[.]" *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Bird sought three equitable remedies in her complaint: (1) a declaration that the College discriminated against her on the basis of disability, in violation of Title III and the Rehab Act; (2) an order requiring the College to change its overseas programs to prevent future discrimination against disabled persons; and (3) an order enjoining the College from releasing her grades for the semester she participated in the Australia program. We hold that Bird has standing to seek only the last remedy.

■ Bird cannot demonstrate a real or immediate threat that the College will again subject her to discrimination. She has since graduated from the College, and has not alleged that she plans to return as a student or participate in the overseas programs. Accordingly, she lacks standing to seek a declaration that the College discriminated against her, or an order requiring the College to change its overseas programs.

■ However, Bird's less-than-average grades for some portions of the program's course work are sufficient to establish that her threat of injury was actual. Even though Bird has since graduated, her injury continues in the form of having received poor grades for the semester. Those grades remain in her transcript and can adversely affect her chances of employment and of admittance to graduate school. Second, there is a plausible causal connection between her academic performance in the class and the alleged discrimination: for example, because she did not participate in some of the class activities, Bird might have missed information crucial to her performance in the class. Finally, an injunction would redress, at least in part, her injury by requiring the college not to release her semester grades. Accordingly, we conclude that Bird has standing to seek this last form of relief.

## B. The merits

■ We next consider the district court's decision to deny Bird equitable relief under the Acts. The ruling is reviewed for an abuse of discretion, and we will not reverse unless the court "fails to apply the correct law or ... rests its decision on a clearly erroneous finding of material fact." *Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1313 (9th Cir.1997).

Section 504 of the Rehab Act prohibits discrimination against disabled individuals by entities receiving federal funding. It provides in part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). In other words, the College must provide Bird with "meaningful access" to its programs. *Hunsaker v. Contra Costa County,* 149 F.3d 1041, 1043 (9th Cir.1998). To that end, it may be required to make reasonable, but not fundamental or substantial, modifications to its programs. *See Alexander v. Choate,* 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Reasonableness depends on the circumstances of each case, and requires a "fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir.2002) (quoting *Wong v. Regents of the Univ. of Cal.,* 192 F.3d 807, 818(9th Cir.1999)).

Similarly, Title III of the ADA prohibits discrimination against the disabled in places of public accommodations. It provides in part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Subsequent provisions of Title III define "discrimination" to include

> a failure to make reasonable modifications in policies, practices, or proce-

dures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii). Like the Rehab Act, Title III of the ADA requires public facilities to offer access to disabled persons by making "reasonable modifications" to their practices and policies. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001).

Contrary to her assertion, Bird does not prevail on the ADA or Rehab claim simply because the College failed to provide her with wheelchair access on a number of occasions. Compliance under the Acts does not depend on the number of locations that are wheelchair-accessible; the central inquiry is whether the program, " 'when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.' " *Barden v. City of Sacramento*, 292 F.3d 1073, 1075–76(9th Cir. 2002) (quoting 28 C.F.R. § 35.150(a)).

■ The College has offered ample evidence of having accommodated Bird's disability. It hired two helpers; paid for her to fly while others took trains and buses; and paid for a cot, a second wheelchair, and a unique shower head built to her specifications. Almost everywhere the class stayed, Bird received alternative lodgings that were wheelchair-accessible. The College did not necessarily fail to make reasonable modifications simply because some aspects of the program did not conform to Bird's expectations.

In addition, evidence in the record indicates that Bird enjoyed many of the benefits offered by the program. In spite of her disability, Bird participated in outdoor activities with her classmates, attended classes, and received full credit for her semester abroad. As the district court noted in denying her equitable relief, the jury found that Bird was not "den[ied] ... the benefits of the Australia program solely due to her disability[,]" and denied her damages under the Rehab Act. Because Bird's claim for relief is premised on a finding of disability discrimination, and because the jury verdict does not contain such a finding, and because the evidence does not compel such a finding, the district court did not abuse its discretion in refusing to order a withholding of her grades.[1]

## II. Jury instructions

■ Bird contends that the district court erred when it refused to give the following requested instructions:

The programs and activities of federally funded Colleges [sic], like Defendant Lewis and Clark College [sic], must assure that the programs and activities they offer are "readily accessible" to persons with disabilities. Such a program or activity will be considered "readily accessible" only if it is conducted in a building and room that mobility impaired persons, such as persons who must use wheelchairs, can enter and leave without assistance from others. Carrying requires such assistance and is therefore unacceptable.

Carrying a person who has a disability may be humiliating because it dramatizes the person's dependency and creates a spectacle.

Carrying a person instead of providing wheelchair access to a facility is con-

1. The College contends that Title III and the Rehab Act do not apply extraterritorially to regulate the administration of overseas programs. We do not reach this issue in light of our decision to affirm the district court's denial of equitable relief.

trary to the goal of providing accessible programs, which is to foster independence, and will be permitted only in manifestly exceptional circumstances, and only if: (1) all personnel who are permitted to participate in carrying the individual with a disability are formally instructed on the safest and least humiliating means of carrying; and (2) the service must be provided in a reliable manner. Carrying is not permitted as an alternative to structural modifications such as installation of a ramp or a chairlift.

"We review a district court's formulation of civil jury instructions for an abuse of discretion." *Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir.1997). However, if jury instructions are challenged as a misstatement of the law, they are reviewed de novo. *See Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir.1998).

■ By describing in detail how carrying a disabled person is dehumanizing, at least parts of Bird's proposed instructions are argumentative and misleading. Denying that portion of the instructions was not error. *See, e.g., United States v. Hall*, 552 F.2d 273, 275 (9th Cir.1977) (a court does not have to accept a proffered instruction that is "manifestly intended to influence the jury towards accepting the evidence of [one party] as against that of [the other].").

■ Nor was it reversible error to omit instructions that carrying a disabled person is an unacceptable method of providing access. Although based in part on federal regulations that disapprove of carrying,

*see* 41 C.F.R. Pt. 35, App. A.,[2] the proposed instructions overall misstate the law. First, they imply that the College is required to make structural modifications to the buildings in Australia ("Carrying is not permitted as an alternative to structural modifications such as installation of a ramp or chairlift."). Second, they unduly restrict accessible programs and activities to those conducted indoors ("[A] program or activity will be considered 'readily accessible' only if . . . conducted in a building and room that mobility impaired persons . . . can enter and leave without assistance from others."). Accessibility is not location-dependent; rather, as we have explained, the essential inquiry is whether the program overall is accessible through reasonable accommodations. *See* 28 C.F.R. § 35.150(a). The district court committed no error in rejecting the proffered instructions.

### III. Post-trial motions

Bird contends that the district court erred in denying her motion for a new trial or, alternatively, her motion to alter judgment, based on evidence that she was denied wheelchair access in violation of the Rehab Act. We review the denial of both motions for an abuse of discretion. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1325 (9th Cir.1995) (motion for a new trial); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001) (Rule 59(e) motion).

As an initial matter, we note that Bird did not object to the instructions given by the district court. Accordingly, we do not review the adequacy of the instructions that were given. *See* Fed. R. Civ. Pro. 51;[3]

---

**2.** 41 C.F.R. Pt. 35, App. A, provides in part: "[C]onsistent with longstanding interpretation of [the Rehab Act], carrying an individual with a disability is considered an ineffective and therefore an unacceptable method for achieving program accessibility."

**3.** Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

*see also Hammer v. Gross,* 932 F.2d 842, 847 (9th Cir.) (plurality opinion) (en banc) (appellate review of unobjected-to instructions not available even in cases of plain error), *cert. denied,* 502 U.S. 980, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991).

■ There was ample evidence to support the jury verdict. Because failure to provide wheelchair access does not automatically establish liability under the Rehab Act, the jury was not required to find against the College even though some aspects of the program were not fully wheelchair-accessible. The College countered Bird's evidence that she was denied access at 22 locations with evidence that it accommodated her disability on numerous occasions. That the jury found against Bird in spite of her claims of discrimination is not against the "clear weight of the evidence" and does not entitle her to a new trial. *Fairley v. Luman,* 281 F.3d 913, 918(9th Cir.2002).

## IV. Motion to compel discovery

Bird assigns error to the district court's refusal to grant her discovery request for production of a journal written by the program director, Darrow. The district court correctly determined that entries starting on February 20, 1996 were prepared by Darrow in anticipation of litigation. There was no abuse of discretion in withholding discovery of that portion of the journal. *See Goehring v. Brophy,* 94 F.3d 1294, 1305(9th Cir.1996).

## V. Breach of fiduciary duty

The College contends in its cross-appeal that no reasonable jury could conclude from the evidence that Bird had a fiduciary relationship with the College under Oregon law. We disagree.

■ As a federal court exercising supplemental jurisdiction over state law claims, we are bound to apply the law of the forum state. *See Bass v. First Pacific*

*Networks, Inc.,* 219 F.3d 1052, 1055 n. 2 (9th Cir.2000). Under Oregon law, no fiduciary duties are implied unless the parties are in a "special relationship." *Bennett v. Farmers Ins. Co. of Oregon,* 332 Or. 138, 26 P.3d 785, 798 (2001). A special relationship arises when "one party has authorized the other to exercise independent judgment in his or her behalf" and, as a result, the party owing the fiduciary duty must take care of certain affairs belonging to the other. *Conway v. Pacific Univ.,* 324 Or. 231, 924 P.2d 818, 824 (1996). What makes a relationship special is not its name, but the roles assumed by the parties. *See Strader v. Grange Mut. Ins. Co.,* 179 Or.App. 329, 39 P.3d 903, 906 (2002).

■ Although the College contends that it owed no fiduciary duties to Bird, ample evidence exists in the record for the jury to make a contrary finding. The College assured Bird on a number of occasions that the overseas program would accommodate her disability. Darrow e-mailed Bird's parents and assured them that Global (the company handling the travel arrangements) and Meyers (the director of the College's overseas program) "commonly handle people both in the field and in home stays that are more physically challenged than [Bird]." Darrow also indicated that adequate facilities would be available in most of the outdoor trips.

Bird also had reason to trust Darrow's assurances. Shortly after her injury, the College worked closely with Bird to ensure that she could navigate comfortably around campus. It installed ramps at her dormitory, changed its inside doors, and remodeled its bathrooms to make them wheelchair-accessible. It even rebuilt parts of the biology labs where she worked. Based on these facts, the jury could have concluded that a "special relationship" developed between the parties.

There was no error in allowing that question to go to the jury.

**AFFIRMED.**