**Jarek MOLSKI, Plaintiff,**

v.

**Tom PRICE, et al., Defendants.**

**No. CV 03–08582 FMC (AJWx).**

United States District Court,
C.D. California.

Aug. 20, 2004.

**480**

Stephen Thomas Erb, Stephen T. Erb Law Offices, San Diego, CA, for Tosco Corporation, Tom Price, Defendants.

Thomas J. Vandeveld, III, Vandeveld Law Offices, San Diego, CA, for Jarek Molski, Plaintiff.

## ORDER DENYING MOTION TO DISMISS

COOPER, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject–Matter Jurisdiction (docket # 13). The Court deems this matter appropriate for decision without oral argument. See Fed. R.Civ.P. 78; Local Rule 7–15. For the reasons set forth below, the Court denies Defendants' Motion.

### I. Background

This action is brought by Plaintiff, who is paraplegic and uses a wheelchair, against the owner of a service station (and the service station itself) based on alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA"). Plaintiff also brings related state-law claims. He seeks injunctive relief under the ADA, as well as actual and/or statutory damages under state law.

The present Motion requires the Court to determine whether Plaintiff has standing to assert his claims.

### II. Standard For Dismissal Pursuant to Fed.R.Civ.P. 12(b)(1)

When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.,* 52 F.3d 817, 818 (9th Cir. 1995).

### III. Jurisdictional Facts

Plaintiff is a paraplegic who has no sensation or motor control below his waist. (Molski Depo. at 24–25) He has resided in Woodland Hills, California, since 1990, and drives an automobile with hand controls. (Molski Depo. at 7, 26–27.)

On December 7, 2002, Plaintiff made his first visit to Defendant's service station.

(Molski Depo. at 55, 66.) He visited Zodo's bowling alley nearby, then went to the service station to get gas. (Molski Depo. at 60, 66.) He wanted to use the service station restroom, but because he was unable to find a handicap parking space, he could not do so. (Molski Depo. at 68–71.) Plaintiff subsequently made another visit to the service station in June 2004. (*See* Ex. 4 to the June 18, 2004, Vandeveld Declaration).[1]

Defendant's service station, which supplies Union 76 brand fuel to consumers, is located off California State Highway 101 ("the 101") in Goleta, California; Plaintiff has taken 10 to 50 trips per year past Goleta on the 101 in the last 5 years. (Molski Depo. at 65). He estimates that he has taken the exit that leads to the service station no more than five times, and did not ever take that exit before December 2002. (Molski Depo. at 12, 55, 65.)

Plaintiff has no existing business or social ties to Goleta. (Molski Depo. at 21.) Nevertheless, at his deposition, Plaintiff testified to his intent to return to Defendant's service station and his reasons for doing so:

Q: Do you have any intention to go back to the service station?

A: Yes, I have.

Q: Why is that?

A: I want to see if the services offered are equal for me as they are for you and others who are able to walk.

Q: Any other reason?

A: Well, if I need gas on the way to northern California, then now if I pull over then I know I can use the restroom facilities and be able to park and not be discriminated against, basically.

(Molski Depo. at 95.)

Plaintiff has filed approximately 240 ADA-related actions in California federal courts within the last five years. (Molski Depo. at 39–40.) At his deposition, Plaintiff testified that he intended to return to all the public accommodations at issue in those cases within the following six-to-twelve-month period. (Molski Depo. at 40–50.) He testified that he would do so in order "find out if the businesses are providing the same type of services to the disabled community or if they are still discriminating" and to "purchase the services or goods they have to offer." (Molski Depo. at 51.)

Plaintiff testified that he settled approximately 20% of the 240 actions he had filed by the time of his deposition, and that those settlements had occurred within "the last few months." (Molski Depo. at 52.) At the time of his deposition, he had, in fact, in his estimation, returned to only approximately 1% of the locations at issue in these settled actions. (Molski Depo. at 52–53.) Plaintiff gave four examples of such locations. (Molski Depo. at 53.)

He contemplates filing an additional 200 to 400 such cases.[2] (Molski Depo. at 49.)

Plaintiff has generated lists of specific businesses, such as In–N–Out Burger and Taco Bell, by on-line searches. (Molski Depo. at 119–120.) Using that list, he visits those facilities in order to evaluate their accessibility by mobility-impaired individuals. (Molski Depo. at 120.) He has generated up to 50 such lists. (Molski Depo. at 122.) He did not make a list of Union 76 Brand service stations. (Molski Depo. at 123.)

## IV. The ADA and Public Accommodations

Title III of the ADA prohibits discrimination "on the basis of disability in the full and

---

1. Plaintiff's attorney claims Plaintiff made a total of four visits to the service station. (*See* Exs. 1—4 to the June 18, 2004, Vandeveld Declaration). These exhibits are receipts from Plaintiff's gasoline credit card, showing fuel purchases from Fairview Unocal, 42 N. Fairview, Goleta, California, 93117, on 12/07/02, 08/21/03, 03/26/04, 06/02/04. At the time of his deposition in May 2004, Plaintiff did not recall his August 2003 visit, but has subsequently produced the receipt; additionally, Plaintiff made another visit to the service station after his deposition. (*Compare*

Vandeveld Decl., Exs. 1—4 *with* Molski Depo. Exs. 2—3).

The receipts evidencing the 08/21/03 and 06/02/04 visits have not been properly authenticated. Defendants have objected to this evidence, and the Court has sustains that objection. Accordingly, the Court does not consider this evidence.

2. A search of the docket reveals that Plaintiff has filed an additional 55 cases in the Central District of California since his deposition.

equal enjoyment of the goods, services, facilities, privileges, advantages or accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Certain private entities, including "gas stations" are considered "public accommodations" under the ADA. 42 U.S.C. § 12181(7)(F). The ADA authorizes injunctive relief for disabled individuals who suffer prohibited discrimination. 42 U.S.C. § 12188(a)(2).

## V. Standing to Seek Injunctive Relief

■ With the present Motion, Defendants challenge Plaintiff's standing to assert his claim for injunctive relief under the ADA. In order to present a "case or controversy" as required by Article III of the United States Constitution, a plaintiff must show that he has suffered an injury in fact, that injury is traceable to the challenged action of the Defendants, and that the injury can be redressed by a favorable decision. *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1019 (9th Cir.2002) (internal citation omitted), *cert. denied*, 538 U.S. 923, 123 S.Ct. 1583, 155 L.Ed.2d 314 (2003).

This standard is based on the Supreme Court case of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In *Lujan*, the Supreme Court considered whether a plaintiff had standing to seek injunctive relief under the Endangered Species Act, which authorizes injunctive relief for a plaintiff who desires to use an area to observe endangered species but is harmed by the absence of such species. *Id.* at 563, 112 S.Ct. 2130. In *Lujan*, the plaintiff challenged several U.S.-funded construction projects, including one in Sri Lanka. *Id.* The Supreme Court held that a plaintiff had no standing to seek injunctive relief where, although professing that she intended to return to Sri Lanka, she "had no current plans" to do so. *Id.* *Lujan* enunciated a three part test:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical .... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560, 112 S.Ct. 2130 (internal alterations, citations, and quotation marks omitted). The parties' arguments address the first part of the test, and therefore so does the Court's analysis.

■ Where, as here, a plaintiff seeks declaratory or injunctive relief, he "must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bird*, 303 F.3d at 1021 (internal quotation marks, alteration marks, and citations omitted). The focus of the parties' disagreement centers on Plaintiff's intent to return to the service station.

■ The Ninth Circuit has considered the issue of when an ADA plaintiff has standing to seek injunctive relief, citing with approval an Eighth Circuit case. *See Pickern v. Holiday Quality Foods Incorporated*, 293 F.3d 1133, 1138 (9th Cir.2002) (citing *Steger v. Franco, Inc.*, 228 F.3d 889, 892–94 (8th Cir. 2000)), *cert. denied*, 537 U.S. 1030, 123 S.Ct. 559, 154 L.Ed.2d 445 (2002). In *Steger*, the Eighth Circuit held that three disabled plaintiffs lacked standing to seek injunctive relief where they did not visit the public accommodation at issue and where they presented no evidence regarding the likelihood of their future visits. *Id.* at 891–93. In contrast, the court held that one blind plaintiff who visited the public accommodation had standing to seek injunctive relief based on his inability to find the restroom due to lack of signage and because he "frequent[ly] visit[ed] government offices and private businesses in [the area] as a sales and marketing" representative. *Id.* The Eighth Circuit so held notwithstanding the fact that the blind plaintiff had visited the public accommodation only once. *Id.* at 893.

It was in *Pickern v. Holiday Quality Foods Incorporated,* that the Ninth Circuit cited *Steger* with approval. *Pickern,* 293 F.3d at 1138. In *Pickern,* the plaintiff visited a store near his grandmother's home, and there encountered barriers to accessibility. *Id.* at 1134. He did not return to the store. *Id.* at 1136. When he filed a claim for injunctive relief more than one year after his initial visit, the defendant moved to dismiss on statute of limitations grounds. *Id.* The Ninth Circuit held that the plaintiff was not required to engage in the "futile gesture" of attempting to gain access to the store during the limitations period. *Id.* at 1136–37. The Ninth Circuit held that in order to have standing to seek injunctive relief, an ADA plaintiff must establish that he has knowledge of architectural barriers at a place of public accommodation, and that he intends to return to the public accommodation if it is made accessible. *Id.* at 1137–38.

Shortly after *Pickern,* the Ninth Circuit decided *Bird v. Lewis & Clark College,* 303 F.3d 1015 (9th Cir.2002), *cert. denied,* 538 U.S. 923, 123 S.Ct. 1583, 155 L.Ed.2d 314 (2003). In *Bird,* the Ninth Circuit held that a former college student had no standing to seek injunctive relief with respect to college overseas programs because she had graduated and had no plans to return as a student or participate in the college's overseas program. *Id.* at 1020. Similarly, the Eleventh Circuit held in *Shotz v. Cates,* 256 F.3d 1077 (11th Cir.2001), that the plaintiffs had no standing to seek injunctive relief regarding courthouse accessibility; the plaintiffs had not attempted to return to the courthouse, and they had not alleged that they intended to do so in future.

It is clear from this case law, and it is clear to the parties, that in order to establish standing to seek injunctive relief, Plaintiff here must demonstrate that he has the intent to return to the service station. Under *Pickern,* his intent to return may be conditioned upon the service station's accessibility.

Plaintiff testified that he has such an intent. Plaintiff testified that he drives the 101 past Goleta 10 to 50 times per year. (Molski Depo. at 65). He testified regarding the intent to return to the service station to check out its accessibility and to use the restroom facilities. (Molski Depo. at 95). This demonstrates an intent to return to the service station sufficient to meet Plaintiff's burden of establishing the Court's subject-matter jurisdiction.

Defendants argue that Plaintiff's testimony regarding his intent to return to the station is inherently incredible. Defendants contend that with over 200 actions pending and with 200 to 400 more actions contemplated, it is obvious that Plaintiff cannot possibly intend to return to all these places of public accommodation, and that he returns to these places only when he is unable to extract a quick settlement from the defendant owners. Defendants point to Plaintiff's testimony regarding his failure to return to the vast majority of public accommodations that have settled lawsuits he brought against them. However, Plaintiff's intent to return to other places of public accommodation is of minimal relevance to his intent to return to the service station at issue in this action.

The Court does not find incredible Plaintiff' testimony regarding his intent to return to Defendants' service station. What Defendants take issue with is not Plaintiff's *intention* to return to the service station; rather, they take issue with Plaintiff's *motivation* to return. The Court can find no authority that suggests that, in order to have standing to assert an ADA Title III claim for injunctive relief, a plaintiff must possess an intention to return to the inaccessible public accommodation that is not motivated in any way by advancing his litigation against that public accommodation.

Two district court cases that have considered this issue under similar facts provide guidance on this issue. In *Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership,* No. 96–WY–2490–AJ, 1997 WL 33471623 (D.Colo.1997), the court found that a plaintiff who used a wheelchair established standing based on his averment that he intended to shop at the defendant's stores. *Id.* at *6. The court so held notwithstanding the defendants' argument that the plaintiff's trip to the defendants stores "was not triggered by a desire to shop in the businesses there, but was rather driven by a desire to ferret out which buildings were in

violation of the ADA's accessibility requirements." *Id.* at *4. The Court agrees that an ADA plaintiff's motivation—but not his intent—is irrelevant for purposes of determining standing.

The Court is also guided by *Clark v. McDonald's Corporation*, 213 F.R.D. 198 (D.N.J.2003). In *Clark*, the court held that a plaintiff who was paraplegic had standing to assert claims against fast-food restaurants that he had visited notwithstanding the defendant's objection that the plaintiff was a mere "tester" and not a "patron" of the restaurant. *Id.* at 227–28. In other words, the defendant contended that the sole purpose of the plaintiff's visits was to test the ADA compliance of the restaurants. *Id.* The court rejected this proposition based on the evidence presented, because the complaint suggested that plaintiff visited each restaurant with the dual motivation of availing himself of the goods and services *and* verifying the restaurant's ADA compliance. *Id.* Such dual motivation, in the *Clark* court's view, sufficed to make the plaintiff a "bona fide 'patron.'" *Id.*

The record here establishes that Plaintiff Molski has a similar dual motivation. With respect to Defendant's service station, Plaintiff testified that he would return to check on the station's ADA compliance, and to use the restroom if it was accessible. (Molski Depo. at 95.) To the extent that Plaintiff's actions with respect to other entities that he has sued could be viewed as relevant here, his testimony as to those entities is consistent with a dual motivation as well. (*See* Molski Depo. at 51 (will return to other public accommodations to check ADA compliance, and to have lunch or dinner); Molski Depo. at 61 (visited bowling alley to determine what services were offered to the disabled and to bowl)).

The Court holds that Plaintiff has met his burden to establish his intent to return to Defendant's service station, and that he has therefore established standing to seek injunctive relief. The Court holds that Plaintiff's motivation—but not his intent—to return to the service station is irrelevant to determining standing. In any event, Plaintiff has established that he has the dual motivation found sufficient to establish standing in *Clark*, which this Court also finds sufficient in this case.

## VI. Objections to Evidence

The parties have presented evidence regarding facts relevant to the determination of standing. Each side has objected to certain portions of the evidence offered by the other side.

Both sides object to issues surrounding the use of Plaintiff's deposition because, at the time of the filing of the Motion and Opposition, Plaintiff had not yet reviewed and signed his deposition. That deficiency has since been cured, and therefore the Court overrules Plaintiff's third objection. The Court has not considered the evidence to which Defendants object in their first, second, and third objections (relating to the parties' arrangements to have the deposition reviewed and signed), and therefore does not rule on these objections.

Both sides also make objections regarding evidence concerning whether Plaintiff made two or four visits to the service station in Goleta. At the time of his deposition, Plaintiff testified to two visits. After his deposition, according to a declaration of his attorney, Plaintiff found a credit card receipt that showed another visit in August 2003. Additionally, also according to his attorney, Plaintiff visited the service station a fourth time in June 2004. The evidence regarding the August 2003 visit and the June 2004 visit have not been properly authenticated. *See* Fed. R.Evid. 602 (requiring that testimony must be based on personal knowledge), 901(b)(1) (noting that evidence may be authenticated or identified by a witness with knowledge that the item is what it is claimed to be); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989) (holding inadmissible an attorney's declaration regarding a registration statement he did not prepare or file). Accordingly, the Court sustains Defendants' fourth and fifth objections, and overrules Plaintiff's fifth objection.

The Court has not considered the evidence to which Plaintiff objects in his first objec-

tion, and therefore the Court does not rule on this objection.

In his second objection, Plaintiff objects to a declaration by Defendants' counsel; specifically, Plaintiff objects to paragraph 3 of the Erb Declaration. In that paragraph, defense counsel states that he has defended a total of six actions brought by Plaintiff based on the ADA. In each of these actions, according to defense counsel, plaintiff did not talk to any employee or officer of the public accommodation. The declaration also states that Plaintiff describes himself as an "attorney" or "investor." Plaintiff objects to this evidence as irrelevant. The Court is unable to discern the relevance of this evidence. Arguably, this evidence advances Defendants' position that Plaintiff is motivated by his desire to scout out public accommodations that do not conform to the ADA in order to sue them, and that he is not motivated by a desire to avail himself of the goods and/or services offered by those public accommodations. As explained more fully above, the Court finds Plaintiff's motivation irrelevant. Accordingly, evidence regarding Plaintiff's motivation is not a "fact ... of consequence" pursuant to Fed.R.Evid. 401, and the Court sustains Plaintiff's objection.

The Court overrules Plaintiff's fourth objection, which addresses docket sheets offered by Defendants that show Plaintiff's many lawsuits.

The Court also overrules Plaintiff's sixth objection, which addresses court decisions offered by Defendants to support their request that Plaintiff's lawsuits be consolidated.

Plaintiff makes a number of objections to the arguments presented by Defendants in their Motion, and to Defendants' characterization of certain evidence. Evidentiary objections may not be made to counsel's argument; rather, "objectionable" argument should be refuted in the objector's opposition or reply. As for Defendants' characterization of the facts, the Court has relied solely on the evidence itself, not counsel's characterization thereof. Accordingly, the Court does not rule on Plaintiff's seventh through fifteenth objections.

## VII. Conclusion

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss for Lack of Subject–Matter Jurisdiction (docket # 13).