**CROWN PACIFIC, Petitioner,**

v.

**OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION, Respondent.**

No. 98–71294.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1999.

Filed Dec. 10, 1999.

Ronald J. Gottlieb, United States Department of Labor, Washington, D.C., for the respondent.

Before: FERNANDEZ, NELSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Crown Pacific Limited Partnership ("Crown"), a forest products company, challenges a citation issued by the Occupational Safety and Health Administration ("OSHA"). It argues that sliding a tire off a pickup truck is not an activity "related" to the "mounting and demounting of rim wheels" when the employer is not engaged in that business and the tire servicing is performed by a third party. We agree and grant Crown's petition for review.

I

"Accidents," Dickens observed, "will occur in the best-regulated families," [1] and, indeed, a tragic mishap commenced the instant argument about how well-regulated Crown's activities are. Forklift operator Terry Davis and mechanic Wally Coissart were unloading a two-piece rim wheel that had just been repaired at an independent tire repair shop and returned to Crown's wood-processing facility in Bonners Ferry, Idaho, for storage. Davis and Coissart edged the tire over the side of the pickup truck. The rim wheel exploded when it hit the ground, launching a rim wheel component into Davis's chest and killing him on impact.

The cause of the explosion was not shrouded in mystery: the dangers of handling multi-piece rim wheels [2] have been

George W. Goodman, Elliott C. Cummins, Cummins, Goodman, Fish & Platt, McMinnville, Oregon, for the petitioner.

1. Charles Dickens, *David Copperfield* 399 (Dodd, Mead & Co. ed., 1943) (1850).

2. A "multi-piece rim wheel" is a vehicle wheel that consists of a "tire, tube and liner" together with a "multi-piece wheel" that is made up of two or more parts designed to hold the tire and wheel together by interlocking components when the tire is inflated. *See generally* 29 C.F.R. § 1910.177(b) (1984). Because vehicular size dictates their use, these wheels are used most frequently on

well documented. Multi-piece rim wheels are prone to separate upon inflation when improperly assembled, often causing the components of the rim wheel "to be hurled violently through the air, with the likelihood of striking a person and causing serious injury or death." 45 Fed.Reg. 6706, 6707 (Jan. 29, 1980) (to be codified at 29 C.F.R. pt. 1910 (1980)).

Following the accident, an OSHA compliance officer conducted an inspection of the Crown facility and cited Crown for serious violations of sections 1910.177(c)(1) and (f)(10), which impose certain safety procedures and training requirements upon employers whose employees "service" multi-piece rim wheels. *See* 29 C.F.R. §§ 1910.177(c)(1) & (f)(10). Crown contested the citation. After conducting an evidentiary hearing, the administrative law judge ("ALJ") concluded that Crown's activities fell within the scope of § 1910.177, and assessed a penalty of $4,000 on Crown for each violation. Crown appealed the ALJ's decision to the Occupational Safety and Health Review Commission ("Commission"), which affirmed the citation. Crown now appeals the final order of the Commission pursuant to 29 U.S.C. § 660(a).

■■■ We review the Commission's legal conclusions to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Martin v. OSHRC*, 941 F.2d 1051, 1055 (10th Cir.1991). "[A]n agency's construction of its own regulations is entitled to substantial deference." *Martin v. OSHRC*, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (quoting *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986)). When the meaning of regulatory language is ambiguous, the Secretary's interpretation of the regulation controls "so long as it is 'reasonable,' that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Id.* at 150–51, 111 S.Ct. 1171

(internal citations and quotations omitted). However, we need not defer to the Secretary's interpretation where an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); *see also D.H. Blattner & Sons, Inc. v. Sec'y of Labor, Mine Safety and Health Admin.*, 152 F.3d 1102, 1106 (9th Cir.1998).

II

■■ At issue is the regulatory reach of OSHA's multi-piece rim wheel directives. The substantive requirements of § 1910.177 apply to those employers whose employees engage in the "servicing of multi-piece and single piece rim wheels" used on large vehicles such as those used by Crown. *See* 29 C.F.R. § 1910.177(a)(1) (1989); 49 Fed.Reg. 4338, 4342 (Feb. 3, 1984) (amending 29 C.F.R. § 1910.177 (1980) to include single piece rim wheels). Under the regulation at issue, "service" or "servicing" means "the mounting and demounting of rim wheels, *and related activities* such as inflating, deflating, installing, removing, and handling" of rim wheels. 29 C.F.R. § 1910.177(b) (emphasis added). "Mounting a tire" involves the assembly of the wheel and tire components to form a rim wheel, including inflation; whereas, "installing a rim wheel" means the "transfer and attachment of an assembled rim wheel onto a vehicle axle hub." *Id.*

■ Crown was clearly not involved in the mounting or demounting of the rim wheels; it had contracted with professionals to perform that task. Thus, the salient question is whether § 1910.177 applies to employers whose employees do not "mount and demount" multi-piece rim wheels.

■■ "A regulation should be construed to give effect to the natural and plain meaning of its words." *Diamond*

trucks, tractors, buses, trailers, and construction equipment.

*Roofing Co., Inc. v. OSHRC,* 528 F.2d 645, 649 (5th Cir.1976). "The ordinary meaning of [the phrase 'relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with' ..." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed.1979)) (internal citations omitted); *compare L.P. Cavett Co. v. U.S. Dep't of Labor,* 101 F.3d 1111, 1114–15 (6th Cir.1996) (phrase "directly upon" not so broad as to allow consideration of "relatedness" of activities). Although the language of § 1910.177 does not place geographic limits on its applicability, clearly, the "inflating, deflating, installing, removing and handling" of a rim wheel must "stand in some relation" to the mounting and demounting process to trigger § 1910.177's substantive requirements. *See* 29 C.F.R. § 1910.177(b) (1984) (defining "service area"); 45 Fed.Reg. at 6708 (standard applies to the "servicing and maintenance" of multi-piece rim wheels, "wherever they are used").

■ ■ Thus, there must be a nexus between the incidental activities of "inflating, deflating, installing, removing and handling" and the primary regulated activity of mounting and demounting. To say that the regulation applies to employers who are not engaged in the business of mounting and demounting tires stretches the "natural and plain meaning" of "related activities" too far. Indeed, such a construction would impermissibly read the phrase "related activities" out of the definition of "servicing." *See Morales,* 504 U.S. at 385, 112 S.Ct. 2031. By conjoining the terms "mounting and demounting" with the words "inflating, deflating, installing, removing, and handling," the ALJ removed entirely the restriction that the "handling" and other activities somehow pertain to the "mounting and demounting"

of rim wheels. Such a reading would render the word "related" meaningless. *Cf. Reich v. General Motors Corp.,* 89 F.3d 313, 315–16 (6th Cir.1996). Thus, the ALJ's interpretation impermissibly stretches the meaning of "related activities" beyond those associated with the mounting and demounting process. *Cf. Diamond Roofing,* 528 F.2d at 650 (improper "[t]o strain the plain and natural meaning of words for the purpose of alleviating a perceived safety hazard"). Thus, we conclude that the regulation only affects those employers whose employees actually mount and demount multi-piece rim wheels.

■ Our interpretation is in accord with the structure of the regulation. The careful distinction made by the Secretary between the meaning of "mounting" a rim wheel and "installing" a tire, *see* 45 Fed. Reg. at 6708, indicates that she intended § 1910.177 to apply only to employers who engage in the enumerated activities as they pertain to "mounting and demounting" multi-piece rim wheels. In fact, the Secretary early on noted that accidents resulting from the separation of multi-piece rim wheels "are most likely to occur while a tire has just been mounted on a rim is being inflated or immediately after it has been inflated." 45 Fed.Reg. at 6707; *see Martin,* 941 F.2d at 1056 (preamble as secondary source of interpretation). In contrast, the Secretary's construction of § 1910.177 extends its application to employers that handle tires for storage or installation on a vehicle without the close temporal connection to mounting and demounting activities suggested by the word "related."

■ Further, in amending § 1910.177 in 1984 to apply to both multi-piece and single piece rim wheels, OSHA also eliminated the phrase "or storing of multi-piece rim wheels" from the definition of "servicing" without explanation.[3] *See* 29 C.F.R.

---

**3.** Prior to the 1984 amendment, "servicing" was defined to mean:

the mounting and demounting of multi-piece rim wheels, and related activity such

§ 1910.177 (1980). By excluding activities less connected to the demounting and mounting process such as maintenance and storage, the 1984 amendment evinces an intent by the Secretary to limit the scope of the regulation's substantive requirements to employers directly engaged in the mounting and demounting process.

■ ■ Finally, in examining a regulation, we take into account common sense, the regulatory purpose and the practical consequences of the suggested interpretations. *See Condon v. Bowen*, 853 F.2d 66, 72 (2d Cir.1988). The Secretary's construction, adopted by the ALJ, would impose different liability for the same conduct. If, for example, an employee edged a tire off a pickup truck after it had been delivered and temporarily stored, no liability would attach; on the other hand, liability would be imposed for the same act if preceded solely by delivery following servicing. Sound regulation should not be founded on "shot of accident [or] dart of chance." [4]

■ ■ Simply put, "[a]n employer should not have to guess at what the Secretary intended." *Martin*, 941 F.2d at 1058 (citing *Kent Nowlin Constr. Co. v. OSHRC*, 593 F.2d 368, 371 (10th Cir. 1979)). An occupational health and safety standard should provide employers with "fair warning of the conduct it prohibits or requires." *Fluor Constructors, Inc. v. OSHRC*, 861 F.2d 936, 941 (6th Cir.1988) (quoting *Diamond Roofing*, 528 F.2d at 649).[5] Because the Secretary's interpretation of § 1910.177 stretches the plain language of the regulation beyond its "plain and natural" meaning, it fails to provide employers with adequate notice.[6] *See Diamond Roofing*, 528 F.2d at 649; *Kent Nowlin*, 593 F.2d at 371; *cf. Georgia–Pacific Corp. v. OSHRC*, 25 F.3d 999, 1005–06 (11th Cir.1994).

■ Thus, even recognizing the deference we must afford the Secretary's construction, we conclude that the plain meaning of the regulation precludes the Secretary's and the ALJ's interpretation.

### III

In sum, we hold that § 1910.177 cannot reasonably be applied to employers such as Crown whose employees are not engaged in any mounting and demounting activities. We therefore grant the petition for review, precluding the application of § 1910.177's requirements to Crown's handling activities.

PETITION GRANTED.

---

as inflating, deflating, installing, removing, *maintaining*, handling *or storing of multipiece rim wheels, including inflating and deflating of wheels installed on vehicles.*
29 C.F.R. § 1910.177 (1980) (emphasis added).

4. William Shakespeare, *Othello*, Act IV, scene 1, 277.

5. The Secretary further complicates matters by suggesting that perhaps the regulation might only apply to a tire "recently demounted and mounted" by an employer who did not demount or mount the tire. However, the Secretary provides no rationale for this theory, which contradicts the Secretary's central argument and finds no support in either the language of the regulation or its regulatory history. In any event, the Secretary's assertion creates additional concerns of fair notice

to the employer because the Secretary provides no guidance as to what constitutes a "recent enough" demounting and mounting of the tire meriting the application of § 1910.177. *See Kent Nowlin*, 593 F.2d at 371 (regulation "must provide a reasonably clear standard of culpability to circumscribe the discretion of enforcing authorities and its agents"); *Fluor*, 861 F.2d at 941.

6. For this reason, even if we were to determine that the Secretary's interpretation of § 1910.177 were permissible, we could not find that the Secretary's application of § 1910.177 to Crown's "handling" of rim wheels provided Crown with the requisite fair notice that the requirements of § 1910.177 applied to its activities.