**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM C. COHEN, an individual, *Plaintiff-Appellant*, <br><br> v. <br><br> CITY OF CULVER CITY; EXCHANGE CLUB OF CULVER CITY, a California corporation, *Defendants-Appellees*. | No. 13-55079 <br><br> D.C. No. 2:12-cv-00156-RGK-PJW <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
December 2, 2013—Pasadena, California

Filed June 6, 2014

Before: Dorothy W. Nelson, Kim McLane Wardlaw,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Wardlaw;
Dissent by Judge Rawlinson

# SUMMARY[*]

## Americans with Disabilities Act

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the defendants on claims under Title II the Americans with Disabilities Act and related California statutes.

The plaintiff, an elderly man suffering from dementia who required a cane for mobility, was injured when he tripped and fell as he tried to walk around a car show vendor's display blocking a curb ramp that provided disabled access to a sidewalk in Culver City, California. The plaintiff claimed that the City violated its obligations under Title II of the ADA by allowing the vendor's display to completely block the curb ramp, impeding disabled access to the public sidewalk, and by failing to post signs identifying alternative disabled access routes.

The panel held that there was a genuine dispute of material fact as to whether the City denied the plaintiff access to the sidewalk by reason of his disability. It held that the district court erred in reasoning that because the plaintiff could have accessed the sidewalk by taking a "marginally longer route" to a different curb ramp, he failed to establish that he was denied access to the sidewalk, because this standard applies when a public entity is modifying existing facilities to achieve ADA compliance under 28 C.F.R. § 35.150. Here, by contrast, the City was in compliance with

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the ADA but allowed elimination of the disabled access it had built. The panel concluded that the City's conduct was more analogous to altering its sidewalks for reasons unrelated to ADA compliance, as contemplated by 28 C.F.R. § 35.151.

The panel reversed the judgment of the district court as to the plaintiff's claims against the City. It addressed claims against another defendant in an accompanying memorandum disposition.

Judge Rawlinson dissented from the portion of the majority's opinion reversing the district court's summary judgment in favor of the City on the plaintiff's claims under the ADA and related California statutes. She agreed with the district court that there was no showing that the plaintiff was excluded from accessing the public sidewalk because two available access routes existed when viewing the sidewalk in its entirety.

**COUNSEL**

Doreen L. Kushner (argued), Law Office of Doreen L. Kushner, Huntington Beach, California, for Plaintiff-Appellant.

Byron Michael Purcell (argued) and Rupert Byrdsong, Ivie, McNeill & Wyatt, Los Angeles, California, for Defendants-Appellees.

# OPINION

WARDLAW, Circuit Judge:

William Cohen, an elderly man suffering from dementia who requires a cane for mobility, walked through an outdoor car show on public streets while in Culver City, California, to attend his grandson's wedding. A vendor's display at the car show blocked the curb ramp that provided disabled access to the sidewalk in front of Cohen's hotel. Cohen was injured when he tripped and fell as he tried to walk around the display and step up on to the sidewalk.

Cohen filed this action against the City of Culver City ("the City") and the Exchange Club of Culver City ("the ECCC"), alleging violations of the federal Americans with Disabilities Act (ADA) of 1990 and various California statutes.[1] He appeals the district court's grant of summary judgment in favor of the defendants. We must decide whether the City may have violated its obligations under Title II of the ADA by allowing the vendor's display to completely block the curb ramp, impeding disabled access to the public sidewalk, and by failing to post signs identifying alternative disabled access routes. We conclude that a genuine dispute of material fact exists as to whether the City denied Cohen access to the sidewalk by reason of his disability, and, accordingly, we reverse in part and remand.

---

[1] We address Cohen's claims against the ECCC under the DPA and the Unruh Act in an unpublished memorandum disposition accompanying this opinion.

## I.

Cohen, a Florida resident, visited Culver City in May 2011 to attend his grandson's wedding. He stayed at the Culver Hotel in downtown Culver City. Four years earlier, Cohen had been diagnosed with moderate dementia. He subsequently suffered from declining cognitive function and poor balance. In February 2011, Cohen was reevaluated by his physician. He exhibited increased difficulty with his balance and lower than expected learning and memory scores.

On May 7, 2011, the City and the ECCC sponsored their annual car show on the public streets and sidewalks of downtown, including those immediately adjacent to the Culver Hotel. The streets, closed to automobile traffic for exclusive use by pedestrians, were lined with vintage automobiles and vendors' displays. Drivelines, a participating vendor, positioned its display so as to straddle the pedestrian crosswalk and sidewalk between the car show and the main entrance to the Culver Hotel. The display, which included a golf cart, several tables, and a large canopy, also completely blocked the disabled access curb ramp connecting the sidewalk to the street at that point.

On the day of his grandson's wedding, Cohen attended the car show. On his way back to the hotel, Cohen saw that the curb ramp was blocked, so he tried to walk around the vendor's display and step up over the curb on to the sidewalk. Instead he slipped and fell face first on to the sidewalk, sustaining facial abrasions and contusions. Other curb ramps connected the street to the sidewalk about twenty yards and ninety yards away in either direction, but there were no signs that might point Cohen in those directions, and the City, which deposed Cohen, adduced no evidence that he was

aware of the other ramps. Drawing all reasonable inferences in Cohen's favor, he reasonably believed he had no choice but to negotiate the curb ramp.

Cohen asserts claims for damages against the City and the ECCC under Title II of the federal ADA and three California statutes: the Disabled Persons Act (DPA), the Unruh Civil Rights Act, and California Government Code sections 830 and 835.[2] The district court granted summary judgment in favor of the defendants on all claims.[3]

We address only Cohen's claims against the City under the ADA, the DPA, and the Unruh Act. The district court ruled that a genuine dispute of material fact exists as to whether Cohen is disabled under the ADA. It found, however, that Cohen could have accessed the public sidewalk by traveling a "marginally longer route" to another disabled access curb ramp twenty yards down the street. On this basis, the district court held that the City did not deny Cohen access to the public sidewalk under Title II of the ADA. Because Cohen's DPA and Unruh Act claims are based on his ADA claim, the district court granted summary judgment for the City on all three.

---

[2] Cohen named three other private defendants in addition to the City and the ECCC, but he subsequently dismissed them. The district court denied Cohen leave to amend his complaint to assert a claim against the ECCC under Title III of the ADA, which governs public accommodations.

[3] Cohen does not appeal the grant of summary judgment for both defendants on his claims under California Government Code sections 830 and 835. Nor does he challenge the district court's ruling that the ECCC cannot be liable under Title II of the ADA because it is not a public entity or an instrumentality thereof.

## II

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). We must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008).

## III.

### A.

The ADA aims to "provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Congress enacted the statute on the premise that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). Therefore, the ADA proscribes not only "obviously exclusionary conduct," but also "more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' full and equal enjoyment" of public places and accommodations. *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc) (internal quotation marks omitted).

Title II is the portion of the ADA that applies to state and local governments. *See* 42 U.S.C. § 12131. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. Title II emphasizes "program access," meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons.[4] *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1215–16, 1222 (9th Cir. 2008). A public entity must make reasonable modifications to avoid discrimination against persons with disabilities, unless it can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity it provides. 28 C.F.R. § 35.130(b)(7); *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004).

We construe the language of the ADA broadly to advance its remedial purpose. *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002). We have explained that the broad language of Title II brings within its scope "anything a public entity does." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotation marks omitted). A city sidewalk is therefore a "service, program, or activity" of a

---

[4] In contrast, Title III of the ADA, which governs places of public accommodation, imposes more stringent requirements aimed at ensuring that every *facility* is equally accessible to disabled persons. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 882 (9th Cir. 2004).

public entity within the meaning of Title II. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).[5]

To prevail under Title II, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability. *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Title II authorizes private suits for money damages.[6] 42 U.S.C. § 12133; *see Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

As authorized by the statute, 42 U.S.C. § 12134, the United States Attorney General has promulgated a vast body of regulations implementing Title II. The regulations flesh out public entities' statutory obligations with more

---

[5] We do not address whether the car show held on city streets also falls within the meaning of the phrase "service, program, or activity" of the City.

[6] Recovery of damages under Title II requires a showing of intentional discrimination. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). The plaintiff must prove that the defendant public entity acted with "deliberate indifference," meaning that it knew that harm to a federally protected right was substantially likely and failed to act upon that knowledge. *Id*. at 1139. However, Cohen may recover damages for an ADA violation under the California statutes he invokes *without* a showing of intentional discrimination. *See Munson v. Del Taco, Inc.*, 208 P.3d 623, 625 (Cal. 2009) (holding that a plaintiff need not prove intentional discrimination to recover for an ADA violation under the Unruh Act). Accordingly, we do not decide whether Cohen has demonstrated that the City acted with deliberate indifference or whether he may be able to do so at trial.

specificity, but a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct. *See, e.g.*, *Barden*, 292 F.3d at 1076–78 (applying Title II to sidewalks even though no implementing regulations specifically addressed sidewalks). We give Department of Justice (DOJ) regulations construing Title II "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010) (internal quotation marks omitted).

We rely heavily on two of these regulations in reviewing the district court's decision. 28 C.F.R § 35.150 governs existing facilities. It requires the City to operate each program, service, or activity in a manner that, viewed in its entirety, is readily accessible to and usable by persons with disabilities. 28 C.F.R. § 35.150(a). To comply with this mandate, the City may make structural changes to its existing facilities, but it need not do so if other methods, such as relocating services to different buildings, would be effective. *Id.* § 35.150(b)(1). The City must prioritize methods of compliance that enable it to provide services to disabled persons in "the most integrated setting appropriate." *Id.* If the City chooses to comply by modifying its existing facilities, additional requirements follow.

For instance, if the City chose to modify facilities that existed when the ADA took effect on January 26, 1992, it was required to complete the modifications within three years of that date. *Id.* § 35.150(c). If the City employed fifty or more persons, it was also required to develop, within six months of January 26, 1992, a transition plan setting forth its planned modifications. *Id.* § 35.150(d)(1). If the City had authority over streets or walkways, its transition plan was required to

include a schedule for installing disabled access curb ramps at intersections, giving priority to intersections located near important public services. *See id.* § 35.150(d)(2). However, because § 35.150 generally allows the City to choose its method of making programs and services accessible, it does not necessarily compel the construction of curb ramps in every situation.

By contrast, 28 C.F.R. § 35.151 governs facilities that the City begins to build or alter after January 26, 1992. *Id.* § 35.151(a)(1), (b)(1). It provides that every newly built or altered portion of such a facility must be "readily accessible to and usable by individuals with disabilities," *id.*, unless doing so would be "structurally impracticable," *id.* § 35.151(a)(2). It also requires compliance with detailed accessibility standards, *id.* § 35.151(c)(1), (2), and sets forth additional requirements specific to dormitories, stadiums, prisons, and other kinds of facilities, *id.* § 35.151(f), (g), (k). With respect to curb ramps, § 35.151 provides:

> (1) Newly constructed or altered streets, roads, and highways *must* contain curb ramps or other sloped areas at *any* intersection having curbs or other barriers to entry from a street level pedestrian walkway.

> (2) Newly constructed or altered street level pedestrian walkways *must* contain curb ramps or other sloped areas at intersections to streets, roads, or highways.

*Id.* § 35.151(i) (emphasis added).

Together, these two regulations effectuate the ADA's mandate that public entities make reasonable modifications to their programs and services to accommodate disabled persons. *See Lane*, 541 U.S. at 532. Congress recognized that it would be unreasonable to require a public entity to extensively renovate all of its existing facilities to bring itself into compliance with the ADA. *See id.* Once public entities choose to build new facilities or renovate existing ones, however, they can reasonably be required to do so in a manner that complies with "specific architectural accessibility standards." *Id.* For this reason, § 35.150 does not require the City to build curb ramps at every corner during its transition to compliance with the ADA. *See Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011) (en banc). When the City is already altering or building a sidewalk anyway, § 35.151 requires it to construct a curb ramp at every affected intersection because the additional cost of doing so is minimal. *See id.*

## B.

The district court erred by holding that the City is entitled to summary judgment. It mistakenly reasoned that, because Cohen could have accessed the sidewalk by taking a "marginally longer route" to a different curb ramp, he failed to establish that he was denied access to the sidewalk. The district court relied on *Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1335–41 (S.D. Cal. 1997), *aff'd*, 172 F.3d 876 (9th Cir. 1999), and *Parker v. Universidad de P.R.*, 225 F.3d 1, 6–7 (1st Cir. 2000). These cases are inapposite, however, because they address public entities' obligations only when they modify existing facilities to achieve ADA compliance under 28 C.F.R. § 35.150. We confront entirely different circumstances here, where the City was in compliance with

the ADA, but allowed elimination of the disabled access it had built.

In *Schonfeld*, the city of Carlsbad, California, was working toward compliance with the ADA by modifying its existing facilities, including its city hall, library, bus stops, and sidewalks, under 28 C.F.R. § 35.150. A putative class of disabled plaintiffs alleged, among other things, that Carlsbad had failed to timely adopt the transition plan mandated by § 35.150(d)(1) and failed to install curb ramps at certain intersections within three years of January 26, 1992, as required by § 35.150(c). *Schonfeld*, 978 F. Supp. at 1333, 1335. The plaintiffs introduced evidence that curb ramps had not been built at various corners, but they did not introduce evidence that they were unable to access city streets or parking facilities at those locations. *Id.* at 1340. The court held that the plaintiffs' evidence was insufficient to create a genuine dispute of material fact as to whether Carlsbad had denied them access to a public service under the ADA, and it granted summary judgment in Carlsbad's favor.[7] *Id.* at 1341.

The court in *Schonfeld* correctly reasoned that § 35.150 did not require Carlsbad to build a curb ramp at every intersection. Rather, that provision simply required Carlsbad's programs and services to be accessible as a whole, and it allowed Carlsbad to choose its method of complying with this requirement. *Id.* at 1339 n.11. The ADA allowed Carlsbad to compel disabled persons to travel a "marginally longer route" under some "limited circumstances," as long as its programs were still accessible as a whole. *Id.* The mere

---

[7] *Schonfeld* was decided before we held that the sidewalk is a "service, program, or activity" under Title II. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).

fact that some city sidewalks did not have curb ramps was therefore insufficient to create a triable issue as to whether Carlsbad violated Title II. *Id.* at 1341. In reaching this conclusion, the court in *Schonfeld* relied on the ADA Title II Technical Assistance Manual, a DOJ publication that provides guidance to public entities on ADA compliance. *See id.* at 1339 n.11. The Technical Assistance Manual similarly explains that, under 28 C.F.R. § 35.150, "public entities are not necessarily required to construct a curb ramp at every such intersection," and that it may be appropriate to compel disabled persons to take a "marginally longer route." THE AMERICANS WITH DISABILITIES ACT: TITLE II TECHNICAL ASSISTANCE MANUAL (1993), § II-5.3000, *available* at http://www.ada.gov/taman2.html.

In *Parker*, the disabled plaintiff attended an awards ceremony held at the Botanical Gardens of the University of Puerto Rico, a public institution. *See Parker*, 225 F.3d at 3. Park staff directed the plaintiff, who required a motorized wheelchair for mobility, to use a particular path to travel to a garden in which the ceremony was held. *Id.* at 3. The plaintiff introduced evidence that the path was not designed for disabled access. *Id.* The plaintiff's wheelchair flipped over when, according to a witness, it fell off a two-inch lip at the bottom of the path. *See id*. The plaintiff broke his clavicle and lost the ability to use his right arm, which he had previously regained through two years of physical therapy after having suffered the stroke that caused his disability. *Id*.

The court in *Parker* applied 28 C.F.R. § 35.150. It explained that, pursuant to its duty under § 35.150(b)(1) to prioritize methods of compliance that would allow it to administer its programs in "the most integrated setting appropriate," the university was required to ensure that

disabled persons could access the ceremony site "using safe walkways, ramps, and curb cuts." *Id.* at 6–7 (internal quotation marks omitted). The court observed that the university was "not required to make every passageway in and out of the [site] accessible," but was required to provide "at least one" safe access route for a person in a wheelchair. *Id.* at 7. Consequently, the court in *Parker* held that judgment as a matter of law in favor of the university was improper. *Id.* A jury could have concluded that the disabled plaintiff used the path intended for wheelchair access, that the path was maintained in an unsafe manner, and that the unsafe conditions caused the plaintiff's injuries. *Id.*

Here, the City was not renovating its existing sidewalks under a plan to achieve ADA compliance. It was allowing its sidewalks to be used by private vendors for the purpose of holding a street fair. The curb ramp in front of the Culver Hotel was not under construction or renovation. It already existed. The district court therefore erred by relying on the "marginally longer route" standard of *Schonfeld* and the Technical Assistance Manual, which applies when the City is modifying its sidewalks to achieve program accessibility under § 35.150. Similarly, the district court erred by relying on the *Parker* court's observation that the university was not required to provide multiple disabled access routes to the garden in which the ceremony was held. This statement simply defines the scope of the university's duty under § 35.150 to provide an "integrated" method of access to the programs it held in the garden.

To the extent the regulations governing the construction and renovation of facilities apply to the City's blockage of an existing curb ramp, 28 C.F.R. § 35.151 is more relevant than 28 C.F.R. § 35.150. As we explain above, when the City

builds new sidewalks or alters existing ones for reasons other than retrofitting to achieve ADA compliance, § 35.151 plainly requires it to build a curb ramp at every intersection unless doing so would be structurally impracticable. *See* 28 C.F.R. § 35.151(i). A DOJ publication discussing the implementation of Title II states:

> [W]hen new sidewalks or walkways are built or altered, they must contain curb ramps or sloped areas wherever they intersect with streets or roads. . . . At existing roads and sidewalks that have not been altered, however, city governments may choose to construct curb ramps at every point where a pedestrian walkway intersects a curb, but they are not necessarily required to do so.

Civil Rights Div., U.S. Dep't of Justice, *The ADA and City Governments: Common Problems* 5, *available at* http://www.ada.gov/comprob.pdf. It follows that, under § 35.151, the City cannot justify the failure to build a curb ramp at an intersection on the ground that a marginally longer route was available down the street. The DOJ Technical Assistance Manual, which expressly permits a "marginally longer" disabled access route under § 35.150, contains no such language in its discussion of § 35.151. *See* TITLE II TECHNICAL ASSISTANCE MANUAL, *supra*, § II-6.6000.

The City's conduct here is more analogous to altering its sidewalks for reasons unrelated to ADA compliance, as contemplated by § 35.151, than it is to retrofitting a sidewalk to achieve program accessibility under § 35.150. The City chose to alter the existing arrangement of the public sidewalk by allowing private vendors to set up displays for the purpose

of holding a car show. The vendors' presence was entirely unrelated to the goal of making the City's programs or services accessible to disabled persons. It would not have imposed an additional burden on the City for it to require the vendors to locate their booths a few feet in either direction to avoid blocking disabled ramps.

Sections 35.150 and 35.151 both implement, in different circumstances, the ADA's requirement that public entities make reasonable modifications to accommodate persons with disabilities. *See Lane*, 541 U.S. at 532. The less stringent demands of § 35.150 govern when it would be unreasonable to expect public entities to comply with the more exacting standards of § 35.151. *See id.*; *Frame*, 657 F.3d at 232. This is not such a circumstance. When the City has already built a direct route that is accessible to disabled persons, it is reasonable to require the City not to force disabled persons to look for and take even a marginally longer route. Because § 35.150 does not apply, the existence of an arguably marginally longer alternative route does not entitle the City to summary judgment on Cohen's Title II claim.

## C.

A genuine dispute of material fact exists as to whether the City denied Cohen access to the sidewalk on the basis of his disability by permitting a private vendor's display to completely block the existing curb ramp.

For example, the City may have violated a regulation requiring it to maintain disabled access features in good working order. The City must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons

with disabilities by the Act or this part." 28 C.F.R. § 35.133(a). Because the regulations define "facility" to include "any portion of . . . roads, walks, or passageways," city sidewalks are among those facilities that the City must maintain in operable working condition. *See id.* § 35.104. Only "isolated or temporary interruptions in service or access due to maintenance or repairs" are permissible. *Id.* § 35.133(b). The rationale for this requirement is obvious: there is little point in building an accessible route if it is not kept in a condition that allows disabled persons to use it. *See* 28 C.F.R. pt. 35, app. B. As the guidance accompanying this regulation makes clear, the City is therefore required to keep disabled access routes "free of obstructions." *Id.* While temporary obstructions do not violate the ADA, obstructions that persist beyond a reasonable period of time do violate the statute. *Id.*

A jury could conclude that the City violated this provision. The vendor's display obstructed the disabled access curb ramp that connected the city streets with the public sidewalk in front of the Culver Hotel. A genuine dispute of material fact exists as to whether this particular curb ramp was "required" to make the sidewalk "readily accessible" to persons with disabilities. 28 C.F.R. § 35.133(a). The City would have been required to build this curb ramp if it altered this particular segment of the street or the sidewalk after January 26, 1992. *See* 28 C.F.R. § 35.151(i). The City, which bore the burden of production on its motion for summary judgment, did not produce any evidence showing that the street or sidewalk had not been altered since January 26, 1992. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A genuine dispute of material fact also exists as to whether the City failed to maintain this curb ramp in

"operable working condition," 28 C.F.R. § 35.133(a), by allowing the private vendor's booth to block the ramp for more than "a reasonable time," 28 C.F.R. pt. 35, app. B. The trier of fact must determine whether the duration of the obstruction was reasonable. *Cf. Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996) (holding that whether a plaintiff's proposed modifications to a defendant's policies are "reasonable" under Title II is a question of fact).[8]

Our discussion of this particular theory of liability is not meant to imply that it is the *only* way the City may have denied Cohen access to the sidewalk by reason of disability.

---

[8] The Seventh Circuit requires that a plaintiff show more than an "isolated instance[] of employee negligence" to prove a violation of a Department of Transportation regulation implementing Title II that is substantially identical to 28 C.F.R. § 35.133(a). *Foley v. City of Lafayette*, 359 F.3d 925, 930 (7th Cir. 2004). We are not necessarily convinced that this requirement is warranted by the text of the regulation, which contains no mens rea standard and simply commands public entities to maintain disabled access features in operable condition. Nonetheless, we need not decide whether to adopt the Seventh Circuit's gloss on what otherwise appears to be a strict liability statute because the City would not be entitled to judgment as a matter of law even under that heightened standard.

The City introduced evidence that it never approved the specific layout or placement of the vendors' booths at the car show. Cohen introduced evidence that the City entered into a license agreement with the ECCC that authorized the ECCC to hold the car show but contained no nondiscrimination provision and made no reference to disabled access. A jury could reasonably infer from the evidence in the record that the City had failed to give *any* consideration to whether the car show would interfere with its obligations under the ADA. A jury could therefore conclude that the obstruction of the curb ramp was the result of a "systemic problem with the policies of the City" rather than isolated employee negligence. *Foley*, 359 F.3d at 930.

More generally, Title II imposes upon public entities a "duty to accommodate" disabled persons. *Lane*, 541 U.S. at 532. Even facially neutral government actions that apply equally to disabled and nondisabled persons may violate Title II if the public entity has failed to make reasonable accommodations to avoid unduly burdening disabled persons. *See McGary*, 386 F.3d at 1265–66; *Crowder*, 81 F.3d at 1484. For this reason, poorly maintained public sidewalks may be a form of discrimination proscribed by Title II. *See Barden*, 292 F.3d at 1076–77. Obstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities. This is precisely the sort of "subtle" discrimination stemming from "thoughtlessness and indifference" that the ADA aims to abolish. *Chapman*, 631 F.3d at 944–45.

Here, a jury could conclude that the City discriminated against Cohen by reason of his disability by failing to take simple, low-cost, reasonable measures to accommodate persons who rely on curb ramps to navigate public sidewalks. The City could have reviewed and approved the placement of the vendors' displays before the car show, as the permit it issued to the ECCC said it would but as it apparently did not. It could have required vendors to avoid positioning their displays in front of disabled access ramps, or to set their displays back a few feet from the curb to allow disabled pedestrians to pass. The City could have posted a temporary sign in front of this particular display directing pedestrians to the other curb ramp twenty yards down the block. Any of these modest measures may have avoided the injuries Cohen suffered. By failing to adopt them, the City may have engaged in the "simple exclusion" of disabled persons through "thoughtlessness" and "inaction" that constitutes discrimination under the ADA. *McGary*, 386 F.3d at 1267

(quoting *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998)).

Because the district court relied on an inapplicable legal standard, and because there is a genuine dispute of material fact as to whether the City denied Cohen access to a public service or otherwise discriminated against him under Title II, the district court erred by granting summary judgment in favor of the City.

## IV.

Cohen also alleges that the City violated two California statutes: the Disabled Persons Act (DPA) and the Unruh Civil Rights Act. A violation of the ADA constitutes a violation of the California DPA. Cal. Civ. Code § 54.1(d). Similarly, a violation of the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f); *see Munson v. Del Taco, Inc.*, 208 P.3d 623, 625 (Cal. 2009) (holding that no showing of intentional discrimination is required to state an Unruh Act claim on the basis of an ADA violation). Because the City is not entitled to summary judgment on Cohen's ADA claim, the district court erred by granting summary judgment for the City on Cohen's claims under the DPA and the Unruh Act.

## V.

We take no position on whether the City did in fact deny Cohen access to a public service or discriminate against him by reason of disability under 42 U.S.C. § 12132. As the district court held, a genuine dispute of material fact exists as to whether Cohen is disabled at all. Various other disputed issues may also be resolved at trial. We simply hold that the City is not entitled to summary judgment because, drawing all

reasonable inferences in Cohen's favor, it *may* have violated the ADA and, consequently, the DPA and the Unruh Act.

We therefore reverse the judgment of the district court as to Cohen's claims against the City. As we explain in a memorandum disposition accompanying this opinion, we reverse the judgment of the district court as to Cohen's DPA claim against the ECCC, but we affirm the judgment of the district court as to Cohen's Unruh Act claim against the ECCC. We remand for further proceedings. Each party shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

RAWLINSON, Circuit Judge, dissenting in part:

I respectfully dissent from the portion of the opinion reversing the district court's entry of summary judgment in favor of Culver City on William Cohen's claims under the Americans With Disabilities Act and related California statutes. The district court ruled that "Culver City has presented evidence that two wheelchair access ramps were located 20 yards east and ninety yards west, respectively, from where Plaintiff incurred his injury." The district court then observed that Cohen "has not disputed this evidence or offered any explanation as to why he did not utilize an alternative route. . . ." The district court concluded that because alternative routes were available, Cohen failed to raise a material issue of fact regarding his alleged exclusion from use of the sidewalk.

The district court's grant of summary judgment was consistent with cases that have addressed the issue raised by Cohen, equal access. As we stated in *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1021 (9th Cir. 2002), "the central inquiry is whether the program, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." (citation and internal quotation marks omitted). This language counsels against a narrow view of access and underscores the importance of the other access routes available to Cohen. I agree with the district court that there was no showing that Cohen was "excluded from accessing the public sidewalks." Rather, Cohen complains that the ramp "most directly accessible to him . . . was blocked by a vendor booth." Nothing in the ADA, the governing regulations or case precedent requires access at a particular location in relation to the plaintiff's destination. Instead, the ADA focuses on ready access. *See Bird*, 303 F.3d at 1021. Ready access within twenty yards fulfilled the City's obligation under the ADA. *See id*. at 1021 (focusing on ready access rather than conformity to the plaintiff's subjective expectations).

In my view, the district court's reliance on *Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1339 n.11 (S.D. Cal. 1997), *aff'd* 172 F.3d 876 (9th Cir. 1999), was entirely appropriate. *Schonfeld* interpreted 28 C.F.R. § 35.150, the same regulation the majority opinion "rel[ies] heavily on." *Majority Opinion*, p. 10. The portion of the *Schonfeld* opinion relied on by the district court was under the heading "Existing Facilities," and addresses the same access points at issue in this case.

We affirmed the district court's decision in *Schonfeld*, including its ruling that:

> [P]ublic entities are not required to construct a curb ramp at every intersection. Alternative routes to buildings that make use of existing curb ramps may be acceptable under the concept of program accessibility in limited circumstances where disabled individuals need only travel a marginally longer route . . .

*Schonfeld*, 978 F. Supp. at 1339 n.11.

Similarly, the district court properly relied on the First Circuit decision in *Parker v. Universidad de P.R.*, 225 F.3d 1, 6–7 (1st Cir. 2000). In *Parker*, the First Circuit also addressed a claim of lack of access to an existing facility. *See id*. at 5. The First Circuit noted that "Title II's emphasis on 'program accessibility' . . . was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to make access available. . . ." *Id*. at 6. The First Circuit also observed that each program must be viewed in its entirety when determining accessibility. *See id*. Applying that view, the First Circuit held that the University was required to provide "at least one route that a [disabled] person . . . [could] use to reach the [program] safely . . ." *Id*. at 7. The First Circuit explicitly held that not every passageway had to be accessible so long as there was one route that a disabled person could use. *See id*.

In this case, the undisputed evidence is that there were two readily accessible routes that Cohen could have used to reach his destination safely. Under the rationale of *Parker* and *Schonfeld*, and viewing the program in its entirety, Cohen was not denied access. In summary, the only cases that have come close to addressing this issue focus on viewing the

program in its entirety and determining whether all access was denied. *See Bird*, 303 F.3d at 1021; *Schonfeld*, 978 F. Supp. at 1339 n.11; *Parker*, 225 F.3d at 6–7. Because two available access routes existed when viewing the sidewalk in its entirety, Cohen was provided sufficient access. I agree with the district court that Cohen failed to raise a material issue of fact on his ADA claims and on his related state law claims. I would affirm the district court's entry of judgment in favor of Culver City in its entirety.