**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALASKA COMMUNITY ACTION ON TOXICS; ALASKA CHAPTER OF THE SIERRA CLUB, *Plaintiffs-Appellants*, <br><br> v. <br><br> AURORA ENERGY SERVICES, LLC; ALASKA RAILROAD CORPORATION, *Defendants-Appellees*. | No. 13-35709 <br><br> D.C. No. 3:09-cv-00255-TMB <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted
August 13, 2014—Anchorage, Alaska

Filed September 3, 2014

Before: Jerome Farris, Dorothy W. Nelson,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Farris

## SUMMARY[*]

### Clean Water Act

The panel reversed the district court's summary judgment entered in favor of Aurora Energy Services, LLC and Alaska Railroad Corporation in a citizen suit that challenged, pursuant to the Clean Water Act, defendants' non-stormwater discharges of coal into Resurrection Bay, Alaska.

The panel held that the district court erred in concluding that the Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity - a general permit under the Environmental Protection Agency's National Pollutant Discharge Elimination System - shielded the defendants from liability under the Clean Water Act for their non-stormwater coal discharges. The panel remanded for further proceedings.

### COUNSEL

Brian Litmans (argued), Trustees for Alaska, Anchorage, Alaska; Aaron Isherwood and Peter M. Morgan, Sierra Club Environmental Law Program, San Francisco, California, for Plaintiffs-Appellants.

John C. Martin (argued), Susan M. Mathiascheck, and Joshua Kaplowitz, Crowell & Moring LLP, Washington, D.C., for Defendant-Appellee Aurora Energy Services, LLC.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Denise Ashbaugh, Jeffrey Marc Feldman, and Ralph Howard Palumbo, Summit Law Group PLLC, Seattle, Washington, for Defendant-Appellee Alaska Railroad Corp.

David S. Gualtieri (argued), Robert G. Dreher, and Aaron P. Avila, United States Department of Justice, Environmental & Natural Resources Division, Washington, D.C., for Amicus Curiae United States of America.

John A. Treptow, Senior Assistant Attorney General, State of Alaska Office of the Attorney General, Anchorage, Alaska, for Amicus Curiae State of Alaska.

Jay Christopher Johnson and Kathryn Kusske Floyd, Venable LLP, Washington, D.C., for Amici Curiae Association of American Railroads and National Mining Association.

Karma B. Brown and Karen C. Bennett, Hunton & Williams LLP, Washington, D.C., for Amici Curiae American Farm Bureau Federation, American Forest and Paper Association, American Petroleum Institute, Chamber of Commerce of the United States of America, CropLife America, National Association of Home Builders, Utility Water Act Group.

Ellen Steen and Danielle D. Quist, Washington, D.C., for Amicus Curiae American Farm Bureau Federation.

Peter Tolsdorf, Washington, D.C., for Amicus Curiae American Petroleum Institute.

Rachel Lattimore and Kristin Landis, Washington, D.C., for Amicus Curiae CropLife America.

Kristy A.N. Bulleit and James N. Christman, Hunton & Williams LLP, Washington, D.C., for Amicus Curiae Utility Water Act Group.

Jan Poling, Washington, D.C., for Amicus Curiae American Forest & Paper Association.

Rachel L. Brand and Sheldon Gilbert, National Chamber Litigation Center, Inc., Washington, D.C., for Amicus Curiae Chamber of Commerce of the United States of America.

Tom Ward, Washington, D.C., for Amicus Curiae National Association of Home Builders.

**OPINION**

FARRIS, Circuit Judge:

Plaintiffs Alaska Community Action on Toxics and Alaska Chapter of the Sierra Club appeal from the district court's grant of summary judgment to defendants Aurora Energy Services, LLC, and Alaska Railroad Corp. The district court ruled that defendants' non-stormwater discharges of coal into Resurrection Bay, Alaska, complied with the Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity – a general permit under EPA's National Pollutant Discharge Elimination System – and thus defendants were shielded from liability under the Clean Water Act. We have jurisdiction under 28 U.S.C. § 1291 and hold that the General Permit prohibits defendants' non-stormwater coal discharges. We reverse the district court's judgment and remand for further proceedings.

I.

"Section 301(a) of the [Clean Water Act] prohibits the 'discharge of any pollutant' from any 'point source' into 'navigable waters' unless the discharge complies with certain other sections of the CWA." *Natural Res. Def. Council, Inc. v. Cnty. of L.A.*, 725 F.3d 1194, 1198 (9th Cir. 2013) (citing 33 U.S.C. § 1311(a)). "One of those sections is section 402, which provides for the issuance of NPDES permits." *Id.* (citing 33 U.S.C. § 1342). "In nearly all cases, an NPDES permit is required before anyone may lawfully discharge a pollutant from a point source into the navigable waters of the United States." *Id.* If a discharger is covered by a NPDES permit and complies with that permit, the permit "shields" it from liability under the CWA, even if EPA promulgates more stringent limitations over the life of the permit. 33 U.S.C. § 1342(k); *Natural Res. Def. Council*, 725 F.3d at 1204. However, any violation of the permit's terms constitutes a violation of the CWA. *See* 40 C.F.R. § 122.41(a); *Natural Res. Def. Council*, 725 F.3d at 1204.

There are two types of NPDES permit: individual and general. *Natural Res. Def. Council v. U.S. E.P.A.*, 279 F.3d 1180, 1183 (9th Cir. 2002). "An individual permit authorizes a specific entity to discharge a pollutant in a specific place and is issued after an informal agency adjudication process." *Id.* (citing 40 C.F.R. §§ 122.21, 124.1–124.21, 124.51–124.66). A general permit, by contrast, is issued for an entire class of hypothetical dischargers in a given geographical region and is issued pursuant to administrative rulemaking procedures. *See id.* § 122.28. Once a general permit has been issued, an entity seeking coverage generally must submit a "notice of intent" to discharge pursuant to the permit. *Id.* § 122.28(b)(2). The date on which coverage

commences depends on the terms of the particular general permit, such as, *inter alia*, upon receipt of the notice of intent or after a specified waiting period. *Id.* § 122.28(b)(2)(iv). Additionally, the permit issuer may require a potential discharger to apply for an individual permit. *Id.* § 122.28(b)(3).

An NPDES permit is required for stormwater discharges associated with industrial activity. 33 U.S.C. § 1342(p); 40 C.F.R. § 122.26(c)(1); *Envtl. Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 841 (9th Cir. 2003). Under EPA regulations, "stormwater" is defined as "storm water runoff, snow melt runoff, and surface runoff and drainage." 40 C.F.R. § 122.26(b)(13). "Storm water discharge associated with industrial activity" is defined as "the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant." *Id.* § 122.26(b)(14). At issue here is the Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity, first issued in 1995 and since reissued in 2000 and 2008. *See* E.P.A., EPA's Multi-Sector General Permit (MSGP), http://water.epa.gov/polwaste/npdes/stormwater/ EPA-Multi-Sector-General-Permit-MSGP.cfm (last visited August 13, 2014).

## II.

The Seward Coal Loading Facility, owned by defendant Alaska Railroad Corp. and operated by defendant Aurora Energy Services, is located in Seward, Alaska, on the northwest shore of Resurrection Bay. The Seward Facility receives coal by railcar and transfers it onto ships through a conveyor system. Allegedly, this system spills coal into the

bay – a non-stormwater discharge. However, the Seward Facility has been covered under the Multi-Sector General Permit since 2001, and defendants argue that any such discharge is authorized by the General Permit.

Plaintiffs disagree, and filed a citizen suit in district court on December 28, 2009. On March 28, 2013, the district court granted summary judgment to defendants on the bulk of plaintiffs' claims, reasoning that defendants' non-stormwater coal discharges were covered by the General Permit. After plaintiffs voluntarily dismissed the surviving claim, the court entered judgment for defendants.

## III.

We review the district court's grant of summary judgment *de novo*. *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014). In particular, we review *de novo* "[t]he district court's interpretation of unambiguous terms of [an] NPDES permit." *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 (9th Cir. 1998).

## IV.

The sole issue on appeal is whether defendants' alleged non-stormwater discharge of coal from the Seward Facility's conveyor system and ship loading area into Resurrection Bay is covered by the General Permit. We interpret general permits as we would a regulation. *See Natural Res. Def. Council*, 279 F.3d at 1183 (noting that general permits "are issued pursuant to administrative rulemaking procedures"); E.P.A., *General Permit Program Guidance* 21 (1988), *available at* http://www.epa.gov/npdes/pubs/owm0381.pdf ("[G]eneral permits are considered to be rulemakings . . . .").

"A regulation should be construed to give effect to the natural and plain meaning of its words." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 698 (9th Cir. 2004) (quoting *Crown Pacific v. Occupational Safety & Health Review Comm'n*, 197 F.3d 1036, 1038 (9th Cir. 1999)).

The plain terms of the General Permit prohibit defendants' non-stormwater discharge of coal. In Part 2.1.2.10, the General Permit states: "You must eliminate non-stormwater discharges not authorized by an NPDES permit. See Part 1.2.3 for a list of non-stormwater discharges authorized by this permit." The referenced section (which is actually Part 1.1.3) lists eleven categories of non-stormwater discharge which are "the non-stormwater discharges authorized under this permit." None of these categories cover defendants' coal discharge.

Defendants point to other sections of the General Permit to argue that the list in Part 1.1.3 was not intended to circumscribe the universe of authorized non-stormwater discharges. First, they note that Part 8.A.2.2 authorizes certain non-stormwater discharges by timber products facilities beyond those listed in Part 1.1.3. However, although this shows that Part 1.1.3 does not provide an exclusive list of permissible non-stormwater discharges by timber products facilities, it does not disturb our conclusion with regard to the Seward Facility. An examination of the permit's structure shows why.

After establishing general requirements for all covered facilities, the General Permit sets out, in Part 8, additional provisions pertaining to specific industrial sectors. The section cited by defendants, for instance, governs Sector A,

pertaining to timber products facilities. The Seward Facility is classified under Sector AD. This sector does not pertain to any particular industry, but rather is a catchall category for "facilities designated by the Director as needing a stormwater permit, and any discharges of stormwater associated with industrial activity that do not meet the description of an industrial activity covered by Sectors A-AC." Unlike sections governing other sectors, the section governing Sector AD does not specify additional categories of non-stormwater discharge that are authorized or prohibited. With the possible exception of additional monitoring or reporting requirements that may be imposed, Sector AD facilities are governed only by the permit's general provisions.

The authorization in Part 8.A.2.2 is simply one part of the General Permit's customization of its requirements for particular industrial sectors. The list in Part 1.1.3 states the non-stormwater discharges authorized by the permit's general regulatory scheme, and Part 8.A.2.2 supplements this scheme for timber products facilities. For facilities in Sector AD, however, non-stormwater discharges are regulated only by the permit's general scheme, and for those purposes the list in Part 1.1.3 is exclusive.

Defendants also point out that several sector-specific sections (applicable to sectors other than Sector AD) explicitly prohibit various categories of non-stormwater discharge, yet these sections would be surplusage if Part 2.1.2.10 already prohibited all non-stormwater discharges not listed in Part 1.1.3. However, although we generally seek to avoid constructions of a general permit that render certain of its provisions superfluous, *see Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976), our analysis here is controlled by the plain text of Part 2.1.2.10, which prohibits defendants'

discharges.  *See Bayview*, 366 F.3d at 698.  If the provision had simply stated, "You must eliminate non-stormwater discharges not authorized by an NPDES permit," one might have been able to argue that it was ambiguous, leaving unanswered the question of which discharges the permit authorizes.  However, the provision answers that question in the next sentence: "See Part 1.[1].3 for a list of non-stormwater discharges authorized by this permit."  Rather than leaving permittees to guess which discharges are excepted from the general prohibition, EPA explicitly refers them to the list in Part 1.1.3.  Defendants' non-stormwater coal discharges are not on this list, thus they are plainly prohibited.

We would have reached the same result had we employed the permit shield analysis that has been applied to individual permits in decisions such as *Piney Run Preservation Association v. County Commissioners of Carroll County, Maryland*, 268 F.3d 255 (4th Cir. 2001).  Under that analysis, a permittee is shielded from liability under the CWA if it (1) complies with the permit's express terms, and (2) discharges pollutants that were disclosed to and within the reasonable contemplation of the permitting authority during the permitting process.  *Id.* at 259.  Here, the express terms of the General Permit prohibit defendants' non-stormwater coal discharges, thus defendants would not be shielded from liability.  As our outcome would be the same regardless of whether *Piney Run*'s analysis applies to general permits, we need not decide whether it does.

V.

The district court erred in concluding that the General Permit shielded defendants from liability for their non-

stormwater coal discharges.    We reverse the grant of summary judgment to defendants and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.